# 23-78-cv

## United States Court of Appeals

*for the*

## Second Circuit

DARKPULSE, INC.,

*Plaintiff-Appellant*,

— v. —

FIRSTFIRE GLOBAL OPPORTUNITIES FUND, LLC, ELI FIREMAN,

*Defendants-Appellees.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

## BRIEF FOR DEFENDANTS-APPELLEES

AARON H. MARKS, P.C.
BYRON PACHECO
JULIA D. HARPER
KIRKLAND & ELLIS LLP
*Attorneys for Defendants-Appellees*
601 Lexington Avenue
New York, New York 10022
(212) 446-4800

## <u>CORPORATE DISCLOSURE STATEMENT</u>

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure, Defendant-Appellee FirstFire Global Opportunities Fund, LLC hereby states that it has no parent corporation or publicly held corporation owning 10% or more of its stock.

# **CONTENTS**

INTRODUCTION.................................................................................1

**STATEMENT OF ISSUES PRESENTED FOR REVIEW**................................5

**STATEMENT OF THE CASE**...............................................................6

**I.    Factual Background** ................................................................6

    A.    DarkPulse Enters Into Convertible Notes with FirstFire. ...................6

    B.    DarkPulse and FirstFire Amend the 2021 Note to Be Governed
        By Delaware Law. ...............................................................8

    C.    DarkPulse Defaults, FirstFire Converts the 2021 Note, and
        Litigation Ensues. ..............................................................9

**II.   Procedural Background** .........................................................10

    A.    DarkPulse Files this Action in New York.......................................10

    B.    Judge Ramos Dismisses DarkPulse's Claims in Their Entirety. ........11

    C.    This Appeal Follows. ...........................................................13

**STANDARD OF REVIEW** .................................................................13

**SUMMARY OF ARGUMENT**..............................................................14

**ARGUMENT** ................................................................................15

**I.    The District Court Correctly Dismissed Counts I, II, and IV
Based on the Amendment.** ..........................................................15

    A.    The District Court Correctly Dismissed DarkPulse's Section
        29(b) Claims Due to the Amendment's Forum-Selection
        Clause. .............................................................................16

    B.    The District Court Correctly Dismissed DarkPulse's RICO
        Claim Due to the Choice-of-Law Clause. ..................................31

**II.   The District Court also Correctly Held that DarkPulse Failed To
Plead A Section 29(b) Claim.** .....................................................37

A. DarkPulse Asks the Court to Overturn Well-Settled Law that a Section 29(b) Claim Fails Where the Contract Does Not Require a Violation of the Exchange Act. ..........................................39

B. DarkPulse's Distinction Between Contracts "Made in Violation" and "Performed in Violation" of the Exchange Act Is Meritless. ............................................................................42

C. DarkPulse's Argument That FirstFire Is an Unregistered Dealer Assumes What It Concludes. ...............................................43

D. FirstFire Is Not a Dealer. ....................................................45

E. DarkPulse Is Not the "Unwilling Innocent" Party Section 29(b) Claim's Require. ....................................................................47

**CONCLUSION** ..................................................................................**48**

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*1077 Madison Street, LLC v. Daniels*,
  954 F.3d 460 (2d Cir. 2020) ...............................................................36

*Acuitas Cap., LLC v. Ideanomics, Inc.*,
  2023 WL 4373314 (S.D.N.Y. June 21, 2023) ...................................40

*Adar Bays, LLC v. GeneSYS ID, Inc.*,
  179 N.E.3d 612 (N.Y. 2021)...........................................21, 22, 26, 37

*Allaire Corp. v. Okumus*,
  433 F.3d 248 (2d Cir. 2006) ..............................................................13

*Aramarine Brokerage, Inc. v. OneBeacon Ins. Co.*,
  307 F. App'x 562 (2d Cir. 2009) .......................................................32

*Beaufort Cap. Partners LLC v. Oxysure Sys., Inc.*,
  2017 WL 913791 (S.D.N.Y. Mar. 7, 2017)........................................36

*Buffalo Forge Co. v. Ogden Corp.*,
  555 F. Supp. 892 (W.D.N.Y. 1983), *aff'd*, 717 F.2d 757 (2d Cir. 1983)..........47

*Buffalo Forge Co. v. Ogden Corp.*,
  717 F.2d 757 (2d Cir. 1983), *cert. denied*, 464 U.S. 1018 (1983) ....................47

*Butterworth v. O'Brien*,
  23 N.Y. 275 (N.Y. 1861) ...................................................22, 26, 27

*Caiola v. Citibank, N.A., New York*,
  295 F.3d 312 (2d Cir. 2002) ..............................................................13

*Cary Oil Co., Inc. v. MG Refining & Mktg., Inc.*,
  230 F. Supp. 2d 439 (S.D.N.Y. 2002) ...............................................47

*Contract Transport Servs., Inc. v. New Era Lending LLC*,
  2018 WL 11226077 (S.D.N.Y. Oct. 26, 2018)...................................35

*Costoso v. Bank of Am., N.A.*,
  74 F. Supp. 3d 558 (E.D.N.Y. 2015) ................................................21

*Cyber Apps World, Inc. v. EMA Fin., LLC*,
  2022 WL 17584012 (S.D.N.Y. Dec. 9, 2022) ....................................38

*Dae Hyuk Kwon v. Santander Consumer USA*,
  742 F. App'x 537 (2d Cir. 2018) ......................................................31

*DarkPulse, Inc. v. EMA Fin., LLC*,
  2023 WL 2307386 (S.D.N.Y. Mar. 1, 2023)..................................6, 29

*Don King Prods. v. Douglas*,
  742 F. Supp. 778 (S.D.N.Y. 1990) ..................................................21

*Durante Bros. & Sons, Inc. v. Flushing Nat'l Bank*,
  755 F.2d 239 (2d Cir. 1985) ............................................................35

*Eastside Church of Christ v. Nat'l Plan, Inc.*,
  391 F.2d 357 (5th Cir. 1968), *cert. denied*, 393 U.S. 913 (1968) ....................42

*Ehrenfeld v. Mahfouz*,
  489 F.3d 542 (2d Cir. 2007) ............................................................13

*EMA Fin., LLC v. AppTech Corp.*,
  2022 WL 4237144 (S.D.N.Y. Sept. 13, 2022) ........................39, 49, 41

*EMA Fin., LLC v. NFusz, Inc.*,
  509 F. Supp. 3d 18 (S.D.N.Y. 2020) ....................................38, 43, 44

*EMA Fin., LLC v. Vystar Corp.*,
  336 F.R.D. 75 (S.D.N.Y. 2020) ..........................................40, 44, 45

*EMA Fin., LLC v. Vystar Corp., Inc.*,
  2021 WL 1177801 (Mar. 29, 2021) ..........................................37, 38

*Found. Ventures, LLC v. F2G, LTD.*,
  2010 WL 3187294 (S.D.N.Y. Aug. 11, 2010)........................40, 46, 47

*Globaltex Grp. Ltd. v. Trends Sportswear Ltd.*,
  2010 WL 1633438 (E.D.N.Y. Apr. 21, 2010) ....................................41

*Golock Cap., LLC v. VNUE, Inc.*,
2023 WL 3750333 (S.D.N.Y. June 1, 2023) ......................................................29

*Haymount Urgent Care PC v. GoFund Advance, LLC*,
2022 WL 6994507 (S.D.N.Y. Oct. 12, 2022)...............................................*passim*

*Haymount Urgent Care PC v. GoFund Advance, LLC*,
2023 WL 185499 (S.D.N.Y. Jan. 13, 2023) .......................................................33

*Haymount Urgent Care PC v. GoFund Advance, LLC*,
609 F. Supp. 3d 237 (S.D.N.Y. 2022) .........................................................24, 25

*Intima-Eighteen, Inc. v. A.H. Schreiber Co.*,
568 N.Y.S.2d 802 (N.Y. App. Div. 1991) ...............................................21, 28, 29

*LG Cap. Funding, LLC v. ExeLED Holdings, Inc.*,
2018 WL 6547160 (S.D.N.Y. Sept. 28, 2018), *vacated on other
grounds*, 2022 WL 16751904 (S.D.N.Y. Nov. 7, 2022) ...................................40

*LG Funding, LLC v. United Senior Props. of Olathe, LLC*,
122 N.Y.S.3d 309 (N.Y. App. Div. 2020)...............................................19, 20, 28

*Lynn v. McCormick*,
2017 WL 6507112 (S.D.N.Y. Dec. 18, 2017) ....................................................34

*Lynn v. McCormick*,
760 F. App'x 51 (2d Cir. 2019) .......................................................................34

*Martinez v. Bloomberg LP*,
740 F.3d 211 (2d Cir. 2014) ............................................................................16

*MFS Sec. Corp. v. N.Y. Stock Exch., Inc.*,
277 F.3d 613 (2d Cir. 2002) ............................................................................13

*Ministers & Missionaries Ben. Bd. v. Snow*,
26 N.Y.3d 466 (N.Y. 2015) .............................................................................32

*Ng v. HSBC Mortg. Corp.*,
2011 WL 3511296 (E.D.N.Y. Aug. 10, 2011), *modified*, 2014 WL
4699648 (E.D.N.Y. Sept. 22, 2014) ..................................................................21

*Parallax Health Scis., Inc. v. EMA Fin., LLC*,
  2022 WL 1446521 (S.D.N.Y. Feb. 24, 2022), *R. & R. adopted as
  modified*, 2022 WL 2531344 (S.D.N.Y. Apr. 7, 2022) ......................................40

*Paycation Travel, Inc. v. Glob. Merch. Cash, Inc.*,
  192 A.D.3d 1040 (N.Y. App. Div. 2021) ...........................................................20

*Phillips v. Audio Active Ltd.*,
  494 F.3d 378 (2d Cir. 2007) ...............................................................................16

*Pompano-Windy City Partners, Ltd. v. Bear Stearns & Co.*,
  794 F. Supp. 1265 (S.D.N.Y. 1992) ...................................................................39

*Power Up Lending Grp., Ltd. v. All. Bioenergy Plus, Inc.*,
  2021 WL 4463921 (E.D.N.Y. Aug. 17, 2021) ...................................................16

*Regional Properties, Inc. v. Financial and Real Estate Consulting
  Co.*,
  678 F.2d 552 (5th Cir. 1982) ..............................................................................43

*Reid v. IBM Corp.*,
  1997 WL 357969 (S.D.N.Y. June 26, 1997) ......................................................31

*Riverwoods Chappaqua Corp. v. Marine Midland Bank, N.A.*,
  30 F.3d 339 (2d Cir. 1994) .................................................................................34

*Rsch. Frontiers Inc. v. Glob. Mirror GmbH & Co. KG*,
  2021 WL 9563171 (E.D.N.Y. Mar. 26, 2021).....................................................30

*Slomiak v. Bear Stearns & Co.*,
  597 F. Supp. 676 (S.D.N.Y. 1984) ..............................................................42, 43

*Streamlined Consultants, Inc. v. EBF Holdings LLC*,
  2022 WL 4368114 (S.D.N.Y. Sept. 20, 2022) ...........................................*passim*

*Tanzanian Royalty Expl. Corp. v. Crede CG III, Ltd.*,
  2019 WL 1368570 (S.D.N.Y. Mar. 26, 2019)....................................................41

*TradeComet.com LLC v. Google, Inc.*,
  647 F.3d 472 (2d Cir. 2011) ...............................................................................13

*U1it4less, Inc. v. Fedex Corp.*,
  871 F.3d 199 (2d Cir. 2017) ...............................................................................34

*Underwood v. Coinbase Glob., Inc.*,
2023 WL 1431965 (S.D.N.Y. Feb. 1, 2023) ...............................................40, 41

*United States Liab. Ins. Co. v. WW Trading Co.*,
2018 WL 6344641 (E.D.N.Y. Sept. 28, 2018), *aff'd*, 813 F. App'x
636 (2d Cir. 2020)...............................................................................................30

*United States v. Moseley*,
980 F.3d 9 (2d Cir. 2020) .................................................................................29

*Weiss v. Columbia Pictures Television, Inc.*,
801 F. Supp. 1276 (S.D.N.Y. 1992) ..................................................................16

*Werner v. Selene Fin., LLC*,
2019 WL 1316465 (S.D.N.Y. Mar. 22, 2019).....................................................21

*Zerman v. Jacobs*,
510 F. Supp. 132 (S.D.N.Y. 1981), *aff'd*, 672 F.2d 901 (2d Cir. 1981) ......39, 41

**Statutes**

15 U.S.C. § 78c(a)(5)(A) ...............................................................................39, 45

15 U.S.C. § 78o(b)(7)............................................................................................39

18 U.S.C. § 1962(c) .........................................................................................31, 32

Exchange Act § 15(a)...................................................................................*passim*

Exchange Act § 20(a)...........................................................................1, 10, 12

Exchange Act § 29(b) ...................................................................................*passim*

N.Y. Gen. Oblig. Law § 5-511.......................................................................18, 20

N.Y. Gen. Oblig. Law § 5-521...................................................................18, 19, 20

N.Y. Penal Law § 190.40.......................................................................18, 19, 20, 28

**Rules**

Fed. R. Civ. P. 12(b) .............................................................................11, 12, 13, 24

Fed. R. Civ. P. 12(f) ............................................................................................23

**Other Authorities**

Black's Law Dictionary (11th ed. 2019) .................................................................27

**INTRODUCTION**

This appeal centers on an April 2021 convertible note entered into by Plaintiff-Appellant DarkPulse Inc. ("DarkPulse") with Defendant-Appellee FirstFire Global Opportunities Fund, LLC ("FirstFire") (the "2021 Note").[1]  After DarkPulse defaulted on the 2021 Note in November 2021, FirstFire exercised its right to convert the Note into DarkPulse common shares and received such shares at that time.  (A-13.)  DarkPulse thereafter initiated this action in the District Court seeking to rescind the transaction and force FirstFire to return the shares (or the value thereof).

DarkPulse's First Amended Complaint ("FAC")[2] asserted six claims:  Counts I and II alleged FirstFire violated Section 29(b) of the Securities Exchange Act of 1934 (the "Exchange Act") by unlawfully transacting in securities as an unregistered dealer; Count III alleged control-person liability under Section 20(a) of the Exchange Act against Eli Fireman, as managing member of FirstFire; Count IV alleged a RICO violation against both defendants on the underlying allegation that

---

[1] In September 2018, DarkPulse also sought and entered into a convertible note with FirstFire (the "2018 Note") and Securities Purchase Agreement (together, the "First Transaction"), which FirstFire converted into DarkPulse shares without objection from DarkPulse at the time.  (A-409.)  In this action, DarkPulse brought claims against FirstFire as to both the 2018 Note and the 2021 Note (together, the "Notes").  (A-14.)  The District Court dismissed DarkPulse's claims as to the 2018 Note (based on statute of limitations and other grounds), which DarkPulse has not appealed.

[2] "FAC" refers to DarkPulse's First Amended Complaint filed on May 5, 2022.  (A-368–96.)

the Notes are criminally usurious under New York law; and Counts V and VI alleged

state law claims of unjust enrichment and constructive trust against both defendants.[3]

(A-14.)

On January 17, 2023, the District Court dismissed DarkPulse's claims in their

entirety. Of relevance to this appeal, the District Court dismissed Counts I and II as

to the 2021 Note because DarkPulse contractually agreed to litigate disputes over

the 2021 Note in Delaware, not New York, pursuant to the forum-selection clause

in an amendment to the Note executed by the parties (the "Amendment"), and

because DarkPulse's assertion of usury provided no basis to void the parties' forum

agreement. (A-17–21.) The District Court further dismissed Counts I and II as to

both Notes for failing to state a claim because they did not require FirstFire to act as

an unregistered broker-dealer—a prerequisite for stating a Section 29(b) claim

applied by every other district court in this Circuit that has considered the issue. (A-

25–27.) The District Court also dismissed Count IV alleging a RICO violation

because DarkPulse failed to allege an underlying criminal violation to support a

RICO claim, given that Delaware (not New York) law applies, and Delaware has no

---

[3] DarkPulse disputed that it had defaulted on the 2021 Note. (FAC ¶ 49 n.15, A-378.) As a result, FirstFire filed suit in Delaware seeking a declaratory judgment that it was entitled to exercise its conversion rights at the default rate, which action FirstFire later voluntarily dismissed after defeating DarkPulse's efforts to enjoin FirstFire from selling its converted DarkPulse common shares. (A-362 n.1; A-412.)

criminal usury law. (A-30.) The District Court declined to exercise pendent jurisdiction over and dismissed DarkPulse's remaining state law claims. (A-31.)

On this appeal, DarkPulse only challenges the District Court's rulings as to the 2021 Note. DarkPulse's arguments seeking to overturn the District Court's rulings are meritless, and the District Court's decision should be affirmed.

*First*, as to Counts I, II, and IV, the District Court correctly held that the Amendment (including its forum-selection and choice-of-law clauses) is presumptively enforceable because it was reasonably communicated to DarkPulse (A-18–19); the Amendment's language was mandatory rather than permissive (A-19); and DarkPulse cannot affirmatively use New York usury laws to void the Amendment, including its designation of Delaware law and Delaware exclusive forum. (A-21.) DarkPulse unquestionably attempts to invoke usury as an affirmative claim (as opposed to as a defense), which runs contrary to established authorities, and DarkPulse offers no basis to depart from New York law limiting usury to defensive claims. It would be particularly unjust to permit DarkPulse to assert a claim for usury as to the Amendment, when DarkPulse had entered into numerous similar convertible notes with FirstFire and other parties prior to executing the Amendment. Moreover, DarkPulse makes no effort to address the other numerous legal flaws in its RICO claim (Count IV), which would have to be

considered if the Amendment's Delaware law and Delaware exclusive forum provisions were somehow not enforceable.

*Second*, the District Court correctly interpreted Section 29(b) of the Exchange Act in finding that neither the 2021 Note nor the related Securities Purchase Agreement ("2021 SPA") involved a prohibited transaction, which is required to maintain a Section 29(b) claim. (A-25–27.) The 2021 SPA obligating FirstFire to purchase the 2021 Note did not explicitly require FirstFire to act as an unregistered dealer by virtue of requiring the purchase of a security. (*Id.*) As a result, DarkPulse's Section 29(b) claim fails.

## <u>STATEMENT OF ISSUES PRESENTED FOR REVIEW</u>

1.      Did the District Court err in holding that DarkPulse could not invoke New York's usury laws in order to invalidate the Amendment to the 2021 Note, including its Delaware forum-selection and choice-of-law clauses?

2.      Did the District Court err in holding that DarkPulse's Section 29(b) claim failed because neither the 2021 SPA nor the 2021 Note required FirstFire to act as an unregistered dealer in violation of Section 15(a) of the Exchange Act?

## STATEMENT OF THE CASE

### I.   FACTUAL BACKGROUND

### A. DarkPulse Enters Into Convertible Notes with FirstFire.

DarkPulse is a Delaware-registered "microcap" company that purports to manufacture, sell, install, and service sensor technology products.  (A-8; A-212; A-319–20.)  DarkPulse supports its operations by issuing convertible promissory notes in which DarkPulse provides the holder of the note the option to convert any outstanding balance into shares of DarkPulse common stock rather than receive repayment in cash.[4]  (A-226; A-297.)

FirstFire is an investment fund that works with public and private companies to provide economic support when such companies seek out cash infusions to maintain their business operations.  (A-409.)  FirstFire specializes in event-driven investing as both an equity and debt participant.  (*Id.*)  In this capacity, FirstFire's investments can provide a lifeline for distressed companies.  (*Id.*)

---

[4] As part of DarkPulse's business operations, for example, between July 2018 and November 2021, DarkPulse entered into approximately 20 convertible notes with multiple investment funds.  (SA-21–26; SA-43–44.)  These notes were converted in 2020 and 2021 on 36 separate occasions, with DarkPulse issuing over 3,545,370,000 common shares in connection with these 36 conversions.  (SA-13; SA-34–38.)  Similar to the present action, DarkPulse has initiated, or is party to, multiple actions in state and federal court to evade its obligations under other convertible notes.  (SA-10–11); *see, e.g.*, *DarkPulse, Inc. v. EMA Fin., LLC*, 2023 WL 2307386, at *1 (S.D.N.Y. Mar. 1, 2023).  DarkPulse was litigating certain of these actions before DarkPulse executed the Amendment with FirstFire.  (SA-10–11.)

DarkPulse first approached FirstFire in 2018, seeking an investment by way of such a note. In September 2018, DarkPulse entered the First Transaction with FirstFire, whereby FirstFire provided DarkPulse with $225,000 in exchange for the 2018 Note. (FAC ¶¶ 26–27, A-373–74.) FirstFire converted the 2018 Note to DarkPulse common shares in multiple partial conversions in 2019, 2020, and 2021. (FAC ¶ 32, A-374–75.) DarkPulse did not object to any of these conversions before it filed this action. (A-227–28.)

On April 26, 2021, DarkPulse sought an additional investment from FirstFire, pursuant to which DarkPulse and FirstFire entered into the 2021 Note and accompanying documents (the "Second Transaction"). (FAC ¶¶ 37, 49 n.14; A-376; A-378.) Under the 2021 SPA, FirstFire agreed to provide DarkPulse with $750,000[5] in cash in exchange for the 2021 Note (FAC ¶ 37, A-376); the 2021 Note, in turn, provided for a principal sum of $825,000 and included an interest rate of 10% per annum. (*Id.*) As with the 2018 Note, the 2021 Note also provided FirstFire with a conversion right whereby FirstFire could forego repayment of the 2021 Note in cash and instead convert outstanding amounts owed under the 2021 Note to shares of DarkPulse common stock. (A-10.) However, whereas the 2018 Note's conversion price was variable (based on market price at the time of conversion, discounted by

---

[5] This was comprised of $825,000 with an original issue discount of $75,000. (A-256.)

30% or 35%), the 2021 Note's conversion price was "fixed."  (FAC ¶ 39, A-376; A-409.)   In particular, Section 1.2(a) of the 2021 Note provides for a per-share conversion price of $0.015 per share—the "Fixed Conversion Price" or, alternatively, a "Default Fixed Conversion Price" of $0.005 per share, applicable if an "Event of Default" occurs.  (FAC ¶ 39, A-376; A-409.)

The 2021 SPA additionally provided that FirstFire would "purchase from [DarkPulse] the . . . Commitment Shares."  (A-124.)  "Commitment Shares" were defined as sixty million shares of DarkPulse common stock, which were subject to a trading limitation of "not more than five percent (5%) of the daily volume" of DarkPulse's stock.  (*Id.*)

## B. DarkPulse and FirstFire Amend the 2021 Note to Be Governed By Delaware Law.

On or about November 4, 2021, FirstFire and DarkPulse executed the Amendment to the 2021 Note.  (FAC ¶ 46, A-377; A-410.)  The Amendment changed the choice-of-law and exclusive-forum clauses in the 2021 Note from New York to Delaware.  (FAC ¶ 47, A-378; A-410.)  DarkPulse's CEO, Dennis O'Leary, executed the Amendment; the Amendment bolded, underlined, and capitalized the changes to the choice-of-law and exclusive-forum clauses.  (A-18; A-410; *see* FAC ¶¶ 46–47, A-377–78.)

**C. DarkPulse Defaults, FirstFire Converts the 2021 Note, and Litigation Ensues.**

The 2021 Note and accompanying Registration Rights Agreement ("RRA") contain several "Events of Default" provisions. (A-10–11.) In particular, the RRA requires DarkPulse to use commercially reasonable efforts to file a registration statement covering the resale of the shares of DarkPulse common stock issued or issuable to FirstFire pursuant to the 2021 SPA and with respect to the 2021 Note and any conversion thereof within ninety (90) days following the funding of the 2021 Note. (FAC ¶ 49 n.14, A-378.) Section 3.16 of the 2021 Note also provides that it shall be an Event of Default for DarkPulse to issue common shares pursuant to an equity line of credit or otherwise in connection with a Variable Rate Transaction entered into after the date of the 2021 Note. (A-117.)

During the relevant time period, DarkPulse's conduct triggered Events of Default with respect to these provisions. First, DarkPulse failed to file a registration statement with respect to the shares related to the 2021 Note (FAC ¶ 49 n.14, A-378). Second, DarkPulse entered into a series of transactions with another private investment group, GHS Investments LLC. (SA-19.) These transactions involved equity lines of credit and Variable Rate Transactions under the 2021 Note, and thus constituted an Event of Default under the 2021 Note. (A-117–18.)

As a result of DarkPulse's actions, and consistent with the terms of the Second Transaction, on November 15, 2021, FirstFire notified DarkPulse that it was electing

9

to convert the outstanding amount on the 2021 Note to DarkPulse common stock. (FAC ¶¶ 48–49, A-378.)  A few days later, on November 17, 2021, and again in accordance with the terms of the Second Transaction, FirstFire submitted another notice of conversion along with a legal opinion and related materials to the transfer agent, who confirmed the issuance of the DarkPulse common stock shares later that day.  (FAC ¶ 49, A-378.)  As of November 17, 2021, FirstFire received 177,375,000 DarkPulse common shares.  (*Id.*)

Shortly thereafter, DarkPulse objected to this issuance of shares, arguing that it had not defaulted, such that FirstFire was not entitled to an increased amount of common shares.  (FAC ¶ 49 n.15, A-378.)  After DarkPulse disputed the amount of shares FirstFire received in converting the 2021 Note, on December 13, 2021, FirstFire filed suit in Delaware Chancery Court, pursuant to the Amendment, seeking declaratory judgment that FirstFire's conversion was appropriate.  (A-412.)

## II.   PROCEDURAL BACKGROUND

### A. DarkPulse Files this Action in New York.

FirstFire's lawsuit in Delaware Chancery Court was filed in compliance with the 2021 Note's forum selection clause.  (FAC ¶ 49 n.15, A-378.)  Weeks later, on December 31, 2021, DarkPulse filed a complaint in the Southern District of New York, alleging violations of Sections 29(b) and 20(a) of the Exchange Act and various state law claims as to both Notes.  (A-32; A-46–50.)   Additionally,

10

DarkPulse moved for a temporary restraining order ("TRO") and a preliminary injunction ("PI") on January 17, 2022, asking the District Court to prevent FirstFire from selling its newly acquired DarkPulse common shares, converted under the 2021 Note, on the market. (A-13.) The District Court denied the *ex parte* TRO and set a briefing schedule for the PI. (A-181–82.) After briefing, the District Court heard oral argument on January 21, 2022, and denied DarkPulse's request for a PI that same day. (A-356–60.) Having defeated DarkPulse's motion for a PI, FirstFire was not prohibited from selling the DarkPulse common shares it converted and thereafter voluntarily dismissed the Delaware action without prejudice on March 14, 2022. (A-412.)

DarkPulse amended its New York complaint on May 5, 2022. The FAC asserted six causes of action as to both Notes: Counts I and II alleged that FirstFire operated as an unregistered securities dealer; Count III alleged that FirstFire's managing member, Eli Fireman, acted as the control person who caused FirstFire to engage in the unlawful Transactions; Count IV alleged civil RICO; Count V alleged unjust enrichment; and Count VI alleged constructive trust. (FAC ¶¶ 90–135, A-385–91.)

### B. Judge Ramos Dismisses DarkPulse's Claims in Their Entirety.

On January 17, 2023, the District Court granted FirstFire's and Mr. Fireman's motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(3),

and 12(b)(6), and dismissed DarkPulse's claims in their entirety. (A-31.) Counts I and II alleging that the Transactions are void pursuant to Section 29(b)'s prohibition on unregistered broker-dealers, and Count III alleging Section 20(a) control-person liability against Mr. Fireman, were dismissed on three bases. *First*, Counts I and II were dismissed as to the 2021 Note because they were brought in the wrong forum (New York), given the Amendment's forum-selection clause designating the state and federal courts of Delaware, which clause the District Court found to be valid and enforceable. (A-12; A-21.) *Second*, as to the 2018 Note, Counts I, II, and III were dismissed as time-barred by Section 29(b)'s statute of limitations. (A-24.) *Finally*, as to both Transactions, Counts I and II were dismissed because DarkPulse failed to plead that either Transaction required FirstFire to act as an unregistered dealer. (A-27.) The Court dismissed Count IV, which alleged a RICO violation based on the underlying allegation that the Notes are criminally usurious under New York law, because New York law does not apply. (A-30.) The District Court declined to exercise pendent jurisdiction over DarkPulse's remaining state law claims. (A-31.)[6]

---

[6] As reflected herein, the District Court did not reach (and did not need to reach) several other dismissal arguments asserted by FirstFire on its motion to dismiss. (*See infra* Sections I.A.3, I.B.2, II.D–E.)

**C. This Appeal Follows.**

DarkPulse appeals only part of the District Court's decision as it relates to the 2021 Note: (1) the dismissal of Counts I and II because they were brought in an improper forum; (2) Count IV for failing to state a claim; and (3) Counts I and II for failing to state a claim. (Br. at 3–4.)[7]

## STANDARD OF REVIEW

This Court reviews "*de novo* a district court's dismissal of a complaint pursuant to Rules 12(b)(1) and 12(b)(3), viewing all facts in the light most favorable to the non-moving party." *TradeComet.com LLC v. Google, Inc.*, 647 F.3d 472, 475 (2d Cir. 2011). The grant of a Rule 12(b)(6) motion to dismiss is subject to *de novo* review. *Allaire Corp. v. Okumus*, 433 F.3d 248, 249–50 (2d Cir. 2006); *see also Ehrenfeld v. Mahfouz*, 489 F.3d 542, 547 (2d Cir. 2007) (question of statutory interpretation is subject to *de novo* review). Allegations in the complaint are accepted as true and all inferences drawn in the plaintiff's favor. *Allaire Corp.*, 433 F.3d at 249–50; *Caiola v. Citibank, N.A., New York*, 295 F.3d 312, 321 (2d Cir. 2002). This Court "may, of course, affirm on any ground appearing in the record below." *MFS Sec. Corp. v. N.Y. Stock Exch., Inc.*, 277 F.3d 613, 617 (2d Cir. 2002).

---

[7] "Br." refers to DarkPulse's brief filed in this appeal on May 1, 2023.

## SUMMARY OF ARGUMENT

The District Court properly dismissed the FAC in its entirety, including Counts I, II, and IV as to the 2021 Note—which are the only claims DarkPulse has appealed.

*First*, as to Counts I and II, the District Court correctly held that the Amendment to the 2021 Note, including its forum-selection and choice-of-law clauses, are enforceable, and that DarkPulse cannot invoke New York's usury laws affirmatively to invalidate the Amendment, or its forum-selection and choice-of-law clauses (*infra* Section I.A). Applying Delaware law as required by the Amendment, the District Court correctly dismissed Count IV on the merits because there is no underlying unlawful debt under Delaware law, and thus no RICO claim (*infra* Section I.B).

*Second*, the District Court correctly dismissed DarkPulse's Section 29(b) claims (Counts I and II) for the additional reason that neither the 2021 Note nor the 2021 SPA require FirstFire to act as an unregistered dealer, a prerequisite for stating a Section 29(b) claim applied by every other court in this Circuit that has considered the issue. (*Infra* Sections II.A–C.) Additionally, FirstFire is not a dealer within the meaning of Section 15(a). (*Infra* Section II.D.) And DarkPulse is not within the class of persons that Section 29(b) is designed to protect. (*Infra* Section II.E.)

Accordingly, the District Court's dismissal should be affirmed.

14

## **ARGUMENT**

## I. **THE DISTRICT COURT CORRECTLY DISMISSED COUNTS I, II, AND IV BASED ON THE AMENDMENT.**

The District Court dismissed Counts I, II and IV on multiple bases and as a result, did not address (or need to address) many of FirstFire's arguments in support of its motion to dismiss. As one aspect of its decision, the District Court correctly enforced the Amendment to the 2021 Note in dismissing Counts I–II (Section 29(b) claims) and Count IV (RICO) of the FAC. Counts I and II were brought in an improper forum, as DarkPulse's effort to use New York usury laws to invalidate the Amendment's designation of a Delaware forum is improper and unsupported by law. Likewise, applying Delaware law (as required by the Amendment's choice-of-law clause), Count IV was properly dismissed because Delaware law does not recognize corporate usury.[8]

---

[8] DarkPulse's briefing is less than clear about what it is appealing, despite nearly twenty pages dedicated to New York's usury laws; FirstFire assumes however that DarkPulse is appealing Counts I, II, and IV as to the 2021 Note. DarkPulse frames "Issue One" in its brief as an appeal of Count IV (RICO) (Br. at 24), objecting to the District Court's enforcement of the Amendment's choice-of-law clause (A-30). However, DarkPulse's arguments regarding "Issue One" discuss only the District Court's dismissal of Counts I and II (Section 29(b) claims) based on the Amendment's forum-selection clause. (Br. at 40; A-17–21.) In any event, the District Court's analysis of New York usury laws is well supported, and its finding that those laws do not void the otherwise enforceable Amendment is grounded in settled case law.

### A. The District Court Correctly Dismissed DarkPulse's Section 29(b) Claims Due to the Amendment's Forum-Selection Clause.

The District Court properly found that the Amendment to the 2021 Note—and as relevant here, its forum-selection clause—was validly procured and enforceable. (A-18; A-21; A-357.) Courts in the Second Circuit have a "strong policy of enforcing forum selection agreements" in this context. *Weiss v. Columbia Pictures Television, Inc.*, 801 F. Supp. 1276, 1280 (S.D.N.Y. 1992). "Courts analyzing a contractual forum selection clause must first ask: '(1) whether the clause was reasonably communicated to the party resisting enforcement; (2) whether the clause is mandatory or permissive, *i.e.*, whether the parties are required to bring any dispute to the designated forum or simply permitted to do so; and (3) whether the claims and parties involved in the suit are subject to the forum selection clause.'" *Power Up Lending Grp., Ltd. v. All. Bioenergy Plus, Inc.*, 2021 WL 4463921, at *5 (E.D.N.Y. Aug. 17, 2021) (citation omitted), *R. & R. adopted*, 2021 WL 4463494 (E.D.N.Y. Sept. 29, 2021). "A party can overcome this presumption only by . . . 'making a sufficiently strong showing that enforcement would be unreasonable or unjust, or that the clause was invalid for such reasons as fraud or overreaching'" *Martinez v. Bloomberg LP*, 740 F.3d 211, 217 (2d Cir. 2014) (quoting *Phillips v. Audio Active Ltd.*, 494 F.3d 378, 383–84 (2d Cir. 2007)), or that the "clause[] contravene[s] a strong public policy of the forum state," *Power Up Lending Grp.*, 2021 WL 4463921, at *5.

Here, there is no dispute that the Amendment was presented to DarkPulse as a documented—indeed, bolded, highlighted, and underlined—revision to the 2021 Note. (A-12.) DarkPulse is a sophisticated business entity that has transacted in commercial loans and convertible notes regularly during the the course of its business (A-226; A-244), as has its CEO, Dennis O'Leary, who was personally provided a copy of the Amendment to review and sign. (A-357.) Accordingly, the District Court properly found that DarkPulse "cannot reasonably contest that the forum selection clause was communicated to it" (A-357), and that the Amendment is "apparent on the face of the document" (A-18). Indeed, nowhere in DarkPulse's opening brief does it dispute (or even engage with) the District Court's forum-selection analysis.

**1. The District Court Correctly Applied New York Usury Laws.**

Instead of engaging the District Court's forum-selection analysis, DarkPulse's *only* argument for why the forum-selection clause does not apply is that the entire contract in which the forum-selection clause is included as part of the Amendment is void *ab initio* under New York's usury laws. (Br. at 26–43.) As the District Court observed below, DarkPulse relies on New York's usury laws as a catchall sword "to void the Second Transaction, [to] circumvent the forum-selection clause in the Amendment, and [to] maintain the instant action." (A-21.) Some of these arguments

17

put the cart before the horse; others are simply circular. None, however, undermine the bases for the District Court's dismissal of Counts I and II of the FAC.

As the District Court correctly concluded, New York law does not permit corporations to use usury affirmatively to avoid their contractual obligations. Under New York law, although corporations may raise usury as a defense to an action to collect on a debt, they are "prohibited . . . from bringing affirmative claims or counterclaims alleging criminal usury and seeking to invalidate an agreement." *Streamlined Consultants, Inc. v. EBF Holdings LLC*, 2022 WL 4368114, at *3 (S.D.N.Y. Sept. 20, 2022). In particular, N.Y. Penal Law §190.40 specifies the rate of criminally usurious loans as those which "exceed[] 25% per annum or the equivalent rate for a longer or shorter period." N.Y. Penal Law §190.40. (*See also* Br. at 26 n.14.) In connection with this definition, New York General Obligations Law §5-511(1) states that usurious contracts—as defined through §190.40—"shall be void," while §5-521(1) states that corporations, specifically, cannot "interpose the defense of usury." The only relevant caveat here, §5-521(3), carves out an exception to the general rule, stating it "shall not apply to any action in which a corporation interposes a defense of criminal usury as described in [§190.40]."

Here, recognizing that usury claims cannot be brought affirmatively under New York law, DarkPulse mischaracterizes the case below in order to recast its affirmative usury claim as a defense. For example, DarkPulse asserts that this case

arose because FirstFire "sought the aid of the court to enforce a loan." (Br. at 28.) But that assertion is demonstrably false. It was DarkPulse who brought this action against FirstFire, requesting that the District Court rescind the Notes and "requir[e] FirstFire to return to DarkPulse all DarkPulse stock obtained" pursuant to FirstFire's conversion of the Notes. (A-392–93.) In other words, FirstFire is not seeking the District Court's aid in enforcing any debt or seeking repayment of a loan; the Notes have already been converted into DarkPulse stock. Rather than "interpos[ing] a defense" based on usury as it claims (Br. at 6), DarkPulse is invoking usury affirmatively to void the Second Transaction and rescind the 2021 Note entirely, which New York law does not allow.

The usury theories rejected in *Streamlined* and *LG Funding* are similar to DarkPulse's invocation of usury here. In *Streamlined*, the court dismissed plaintiff's claims for contract rescission and declaratory judgment that were based on allegations that a loan was criminally usurious, because N.Y. General Obligations Law §5-521 "bars a corporation such as the plaintiff from asserting usury in any action, except in the case of criminal usury as defined in Penal Law § 190.40, and then only as a defense to an action to recover repayment of a loan, and not as a basis for a cause of action asserted by the corporation for affirmative relief." 2022 WL 4368114, at *3 (citation omitted). Likewise, in *LG Funding*, plaintiff brought an action to collect on amounts owed under an agreement, to which defendants asserted

both an affirmative defense of usury and a counterclaim under criminal usury. *LG Funding, LLC v. United Senior Props. of Olathe, LLC*, 122 N.Y.S.3d 309, 311 (N.Y. App. Div. 2020). There, too, the court rejected defendants' counterclaim for usury, finding that "the defendants may assert criminal usury as an affirmative defense, they may not assert criminal usury as the basis for a counterclaim." *Id.* at 313 (citations omitted).

Here, it is the borrower, DarkPulse, who initiated this action, and it is the borrower who invokes New York's usury law (§5-511) in connection with seeking affirmative relief (*i.e.*, rescission and the return of its shares). Accordingly, the District Court properly found that such affirmative use of New York usury laws to "circumvent the forum-selection clause in the Amendment[] and maintain the instant action against Defendants." (A-21.) And the District Court's dismissal on these grounds is not novel nor an outlier; it is consistent with a number of New York cases that are based on well-established New York principles concerning usury. *See, e.g., Streamlined*, 2022 WL 4368114, at *3; *LG Funding*, 122 N.Y.S.3d at 313; *Paycation Travel, Inc. v. Glob. Merch. Cash, Inc.*, 192 A.D.3d 1040, 1041 (N.Y. App. Div. 2021) ("General Obligations Law § 5-521 bars a corporation such as the plaintiff from asserting usury in any action, except in the case of criminal usury as defined in Penal Law § 190.40, and then only as a defense to an action to recover repayment of a loan, and not as the basis for a cause of action asserted by the corporation for

affirmative relief." (citation omitted)); *Intima-Eighteen, Inc. v. A.H. Schreiber Co.*, 568 N.Y.S.2d 802 (N.Y. App. Div. 1991).[9]

**2.  DarkPulse's Cited Cases Do Not Support Its Use of New York Usury Laws Affirmatively to Invalidate the Amendment's Forum Selection Clause.**

DarkPulse—in affirmatively seeking to rescind the 2021 Note—principally relies on three decisions in arguing that the 2021 Note and the Amendment (and forum-selection clause) must be treated as invalid under New York's usury laws: *Adar Bays, LLC v. GeneSYS ID, Inc.*, 179 N.E.3d 612 (N.Y. 2021); *Haymount Urgent Care PC v. GoFund Advance, LLC* ("*Haymount II*"), 2022 WL 6994507

---

[9] Indeed, usury is not the only area where New York law draws a firm line between permitting an affirmative defense and rejecting an affirmative claim. For example, "like usury, '[a] cause of action for unconscionability may not be used to seek affirmative relief' under New York law," *Streamlined*, 2022 WL 4368114, at *6 (citations omitted), and courts routinely and consistently dismiss unconscionability when raised as an affirmative claim. *See, e.g.*, *Ng v. HSBC Mortg. Corp.*, 2011 WL 3511296, at *8–10 (E.D.N.Y. Aug. 10, 2011) (granting defendants' motion for summary judgment as to plaintiff's cause of action based on unconscionability, and holding that plaintiff's attempt "to use the doctrine as a 'sword' [was] improper as a matter of law" (citations omitted)), *modified*, 2014 WL 4699648 (E.D.N.Y. Sept. 22, 2014); *Werner v. Selene Fin., LLC*, 2019 WL 1316465, at *12 (S.D.N.Y. Mar. 22, 2019) (dismissing plaintiff's claim of unconscionability against a defendant, because "Plaintiff impermissibly attempt[ed] to use unconscionability as 'a shield, not a sword'" (citation omitted)); *Costoso v. Bank of Am., N.A.*, 74 F. Supp. 3d 558, 573 (E.D.N.Y. 2015) ("Plaintiff's attempt to convert the doctrine of unconscionability into an affirmative claim for relief must be rejected." (collecting cases)); *see also Don King Prods. v. Douglas*, 742 F. Supp. 778, 780 (S.D.N.Y. 1990) (recognizing unconscionability as an affirmative defense under New York law, with its "primary use as 'a means with which to protect the commercially illiterate consumer beguiled into a grossly unfair bargain by a deceptive vendor or finance company'").

(S.D.N.Y. Oct. 12, 2022); and *Butterworth v. O'Brien*, 23 N.Y. 275 (N.Y. 1861). (Br. at 32–33, 38–40, 43.)  DarkPulse's reliance on these decisions is misplaced. None support DarkPulse's affirmative invocation of New York usury laws to void the Amendment, or its designation of Delaware as the exclusive forum for disputes regarding the 2021 Note.

DarkPulse relies on *Adar Bays* for its "history" of New York usury laws, including the revision of the laws that permit corporations to interpose the defense of usury.  (Br. at 30–31.)  However, *Adar Bays* presented an emblematic instance in which a party invokes usury:  a lender sued a debtor to collect on the balance of a promissory note and the debtor asserted usury as a defense.  *Adar Bays, LLC*, 179 N.E.3d at 622.  The New York Court of Appeals, responding to two questions certified from this Court, held that (1) criminally usurious agreements are void *ab initio*, and (2) the value of shares in floating-price conversion notes may be included in the calculation of interest in the determination of whether the agreement is usurious.  *Id.* at 614.  The court further noted that "the modern conception of our usury laws focuses on the protection of persons in weak bargaining positions from being taken advantage of by those in much stronger bargaining positions."  *Id*. at 620.

By contrast, here, FirstFire is *not* trying to collect on any balance owed from the 2021 Note (which has already been converted to DarkPulse shares); it is

DarkPulse who affirmatively seeks to invalidate the 2021 Note and for FirstFire to return its shares (or the value thereof). DarkPulse is also not some helpless party in need of protecting; it is a sophisticated business that has not only worked with FirstFire before, it has previously executed similar notes, and those prior notes contained similar forum-selection clauses. (A-227–28; A-407–08.) At its core, DarkPulse's aim is to affirmatively undo the 2021 Note (which, as an aside, is a fixed-price and not a floating-price note) by invoking usury, a fact it cannot simply re-describe as a "defense" in order to avoid New York's prohibition on affirmative usury claims.

DarkPulse's appeal also relies heavily on Judge Rakoff's opinion in *Haymount II* to argue that it is not invoking usury affirmatively, but rather, as a defense to FirstFire's motion to dismiss. (Br. at 40.) In *Haymount II*, the defendants moved to strike plaintiffs' class action allegations under Fed. R. Civ. P. 12(f) on the basis that plaintiffs waived their right to pursue a class action in the underlying agreement. 2022 WL 6994507, at *1–2. In response, plaintiffs argued that the entire underlying agreement was void, including the class action waiver, under New York's usury laws. *Id.* at *3–4. Judge Rakoff denied defendants' request, reasoning that the plaintiffs were not making an affirmative usury claim in violation of New York law, but instead, presenting usury as a defense in response to defendants' effort to enforce the class action waiver. *Id.* at *4.

*Haymount II* is plainly distinguishable. As a threshold matter, the argument DarkPulse makes here is similar to the argument Judge Rakoff rejected in an earlier *Haymount* decision on a Rule 12(b)(6) motion, *Haymount Urgent Care PC v. GoFund Advance, LLC* ("*Haymount I*"), 609 F. Supp. 3d 237 (S.D.N.Y. 2022). In this earlier decision, Judge Rakoff unequivocally dismissed plaintiffs' "declaratory judgment count insofar as it seeks a declaration that the [agreements] are void *ab initio*." *Id.* at 254. The court reasoned that "New York courts have uniformly construed this statute as limited to the affirmative defense, and they have prohibited corporations from bringing affirmative claims or counterclaims alleging criminal usury and seeking to invalidate an agreement." *Id.*; *see also Haymount II*, 2022 WL 6994507, at *3 (affirming "that New York law does not authorize corporations to bring affirmative claims alleging criminal usury"). That is in line with what DarkPulse has done here. It argues that Counts I and II of the FAC cannot be litigated in Delaware because the parties' agreement to do so is contained in a contract that is void *ab initio* under New York's usury laws. But the same reasoning of *Haymount I* applies to DarkPulse's affirmative claim to void the 2021 Note and 2021 SPA: New York law forbids it.

*Haymount II* also addresses a different procedural posture than that of the instant case, and Judge Rakoff's ruling should be cabined to the class-action waiver

context.  In refusing to strike plaintiffs' class action allegations based on the class action waiver at issue, Judge Rakoff emphasized:

> In denying this relief, the Court merely allows plaintiffs the opportunity to seek to certify a class.  To do so, plaintiffs will of course need to make a number of showings—almost certainly including a showing that the questions of whether or not the [agreements] are void or whether the [agreements'] class action waiver provisions can be enforced against them are capable of class-wide resolution.

2022 WL 6994507, at *6 n.3.  Judge Rakoff did not hold, as DarkPulse argues, that *any* invocation of usury by a plaintiff in response to a defendant's motion qualifies as a "defense" rather than an affirmative claim.

Indeed, if *Haymount II* were construed as broadly as DarkPulse claims it should be, the decision could not be squared with *Haymount I*, or the general rule prohibiting such affirmative uses of usury under New York law.  In fact, Judge Rakoff was careful to distinguish this class action waiver decision from other types of contractual provisions that designate the appropriate forum for disputes about the enforceability of contracts—namely agreements to pursue disputes in an arbitral forum:

> Reserving for the arbitrator the initial determination as to whether an allegedly void agreement is in fact void makes sense, because the whole point of the arbitration provision is to decide in which forum claims should be made and arguments decided. . . . By contrast, the class action waiver provisions at issue here do not require this case to proceed in a different forum, but rather relate to whether plaintiffs may assert their claims on a class-wide basis.

*Id.* at *6 (citation omitted). By the same token, the District Court correctly determined that DarkPulse could not invoke usury to bring Counts I and II in a wholly different forum (New York) than the parties agreed to (Delaware). As with *Haymount II*, allowing DarkPulse "to proceed [in the wrong forum] would . . . frustrate" the parties' forum-selection agreement. *Id.*

Finally, DarkPulse points to *Butterworth v. O'Brien*, 23 N.Y. 275 (N.Y. 1861), for the proposition that the term "interposing" a defense *can* be construed broadly. (Br. at 32.) In *Butterworth*, the court rejected plaintiff-lender's argument that the prohibition in New York usury laws against corporations interposing the defense of usury did not prohibit a corporation from bringing a counterclaim to collect usurious interest amounts above the legal rate and held that the actual effect of the 1850 amendment was to "repeal the existing usury laws of this State as to corporations." *Butterworth*, 23 N.Y. at 281. In 1861, when *Butterworth* was decided, corporations could ***not*** use usury as a defense—in 1965, the legislature repealed "the corporate bar on raising usury as a defense where the interest rate exceeds 25%." *Adar Bays, LLC*, 179 N.E.3d at 620.

Contrary to DarkPulse's claim, the *Butterworth* court's definition of "interposing a defense" does not conflict with the District Court's definition. The *Butterworth* court explained that interposing a defense meant going beyond simply pleading that defense—it also included using usury as a defense to the affirmative

claim throughout the course of the action. *Butterworth*, 23 N.Y. at 278 ("This prohibition is not directed merely against pleading or proving the defence, but it is against interposing it, that is, either by plea or by proof, or by claiming the benefit of it at the trial or hearing.").[10]

Even accepting DarkPulse's broad interpretation, courts today apply a narrower definition of "defense" because the corporate usury defense *is* available in certain limited situations. *See, e.g.*, *Streamlined*, 2022 WL 4368114, at *3 ("The statutory exception for interest exceeding 25 per annum is strictly an affirmative defense to an action seeking repayment of a loan and may not, as here, be attempted as a means to effect recovery by the corporate borrower." (citation omitted)).

**3.** **Accepting DarkPulse's Assertion that its Use of New York Usury Laws Is an Affirmative Defense Is Unwarranted for Several Reasons.**

To accept DarkPulse's argument that its use of New York usury laws qualifies as an affirmative defense rather than an affirmative claim would be to effectively erase a distinction that is firmly enshrined under New York law. It cannot be the law that a plaintiff can recast an affirmative claim as a "defense" simply because a

---

[10] Similarly, in a source DarkPulse itself cites for the proposition that *Butterworth*'s "broad" definition of "defense" permits it to invalidate the Amendment (Br. at 33-34), Black's Law Dictionary defines an "affirmative defense" as a "defendant's stated reason why the plaintiff or prosecutor has no valid case; esp., a defendant's answer, denial, or plea." DEFENSE, Black's Law Dictionary (11th ed. 2019). According to its own dictionary definition, then, DarkPulse's affirmative "defense" is actually an affirmative claim.

defendant invokes a provision of the contract at issue by filing a Rule 12 motion to dismiss. This is especially true where, as here, the FAC expressly pleads that it seeks to rescind transactions because they are criminally usurious. (A-392–93.) A broad definition of affirmative defense in this context would be plainly inconsistent with New York law. *See, e.g., Intima-Eighteen, Inc.*, 568 N.Y.S.2d at 804 (Section 190.40 is "strictly an affirmative defense to an action seeking repayment of a loan and may not . . . be employed as a means to effect recovery by the corporate borrower" (citations omitted)); *see also LG Funding*, 122 N.Y.S.3d at 313 ("[T]he defendants may assert criminal usury as an affirmative defense, they may not assert criminal usury as the basis of a counterclaim." (citations omitted)).

Given this strict line between claim and defense, courts do not tolerate pleading gamesmanship where, as DarkPulse does here, parties attempt to circumvent the bar on invoking usury affirmatively. For example, in *Intima-Eighteen, Inc.*, the plaintiff tried to skirt the rule against raising usury affirmatively by framing its claim as one seeking damages for interest it paid to a co-joint venture in excess of the lawful rate. *Intima-Eighteen, Inc.*, 568 N.Y.S.2d at 803–04. The court rejected plaintiff's effort, reasoning that "a party may not accomplish by indirection what is directly forbidden to it and has accorded the rule a broader scope." *Id.* at 804. It follows, the court concluded, that the usury laws "proscribe[] a corporation from using the usury laws either as a defense to payment of an

obligation or, affirmatively, to set aside an agreement and recover the usurious premium." *Id.*

In this context, DarkPulse, an entity well-versed in notes and debt-financing, is also not the type of party New York usury laws aim to protect. "[T]he modern conception of [New York] usury laws focuses on the protection of persons in weak bargaining positions from being taken advantage of by those in much stronger bargaining positions." *Golock Cap., LLC v. VNUE, Inc.*, 2023 WL 3750333, at *5 (S.D.N.Y. June 1, 2023). As this Court has made clear, in the context of New York's usury laws, "corporations conducting their business transactions should be treated differently from individual consumers seeking personal credit." *United States v. Moseley*, 980 F.3d 9, 21–22 (2d Cir. 2020). Here, both parties are not only sophisticated business entities (represented by counsel in entering the 2021 Transaction (A-357))—they have entered into similar notes in the past without issue (*e.g.*, the 2018 Note). Indeed, prior to entering into the Amendment, not only had DarkPulse entered into numerous similar convertible notes, but it was already in litigation with other counterparties seeking to void those notes. (*Supra* Background I.A n.3; SA-10–11); *DarkPulse, Inc.*, 2023 WL 2307386, at *1. DarkPulse is simply not "the type of needy and unsophisticated consumer[]" contemplated by this Court as entitled to relief from a choice-of-law clause on public policy grounds. *Moseley*, 980 F.3d at 22. (A-30.) In short, this is not the type of dispute New York's usury

laws were designed to address, and there is no basis for this Court to expand New York law beyond its original rationale in these well-established cases.

Lastly, it is settled law in any event that a party cannot ratify a contract it believes is invalid, only to subsequently rescind the same contract on the basis of such invalidity. *See, e.g., United States Liab. Ins. Co. v. WW Trading Co.*, 2018 WL 6344641, at *11 (E.D.N.Y. Sept. 28, 2018) ("[I]ntentional acts, performed in recognition of a contract as valid, result in a ratification of a previously voidable contract and bar rescission."), *aff'd*, 813 F. App'x 636 (2d Cir. 2020). That is exactly the game DarkPulse is engaged in here. There is no dispute that DarkPulse ratified the 2021 Note: on or around November 4, 2021, DarkPulse executed the Amendment to the 2021 Note, thereby "affirmatively acknowledging" the validity of the 2021 Note itself. *See Rsch. Frontiers Inc. v. Glob. Mirror GmbH & Co. KG*, 2021 WL 9563171, at *8 n.2 (E.D.N.Y. Mar. 26, 2021) ("[A] party may ratify a contract by . . . affirmatively acknowledging it." (citation omitted)). Yet just over a month later, in December 2021, DarkPulse filed this lawsuit alleging that the very note it had affirmatively ratified the previous month was invalid. And there is no allegation that DarkPulse was unaware of the terms of the 2021 Note that it now challenges in this action when it ratified it in the Amendment, including FirstFire's conversion rights; indeed, before executing the Amendment, DarkPulse was already litigating other similar notes and claiming they should be void. (*Supra* Background

I.A n.3.)  Accordingly, DarkPulse's execution of the Amendment waived its right to rescind the 2021 Note—assuming it was otherwise voidable under New York's usury laws.  *See Reid v. IBM Corp.*, 1997 WL 357969, at *10 (S.D.N.Y. June 26, 1997) ("[W]hen a party ratifies a voidable contract, he in effect makes a new promise or creates a new legal duty to perform.").

### B. The District Court Correctly Dismissed DarkPulse's RICO Claim Due to the Choice-of-Law Clause.

RICO prohibits "any person employed by or associated with any enterprise . . . to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt."  18 U.S.C. § 1962(c).  Where, as here, a plaintiff bases its RICO claim on the collection of an unlawful debt, "a plaintiff must allege that (1) the debt was unenforceable in whole or in part because of state or federal laws relating to usury, (2) the debt was incurred in connection with the business of lending money . . . at a [usurious] rate, and (3) the usurious rate was at least twice the enforceable rate."  *Dae Hyuk Kwon v. Santander Consumer USA*, 742 F. App'x 537, 539 (2d Cir. 2018) (citations and marks omitted).

In connection with the motion to dismiss, FirstFire made several distinct arguments for why the RICO claim must be dismissed.  (A-461–64.)  The District Court ruled on one of FirstFire's arguments—dismissing Count IV because Delaware law, which applies to the 2021 Note and 2021 SPA, does not contain a

31

usury law. Given Delaware's lack of such usury laws, DarkPulse failed to plead an underlying criminally usurious debt under state law on which to base a RICO claim.

### 1. The Parties' Delaware Choice-of-Law Agreement is Enforceable.

The District Court correctly held that Delaware law applies to the 2021 Note and 2021 SPA. The parties freely and willingly agreed in the Amendment that Delaware law would apply, and DarkPulse failed to show why a clear, unambiguous choice-of-law clause should be disregarded under the applicable legal standard. (A-30.) Thus, for the same reasons noted above concerning the weight of New York authority, the parties' sophisticated business acumen, past practices, and the clear notice of the clauses on the face of the Amendment (*see supra* Section I.A), the Delaware choice-of-law clause is enforceable.

Courts will "generally enforce choice-of-law clauses" as "contracts should be interpreted so as to effectuate the parties' intent." *Ministers & Missionaries Ben. Bd. v. Snow*, 26 N.Y.3d 466, 470 (N.Y. 2015). New York courts only disregard these clauses upon a showing that there is (1) "no reasonable basis for choosing the law of the jurisdiction designated by the parties," (2) fraud,[11] or (3) a violation of public policy. *Aramarine Brokerage, Inc. v. OneBeacon Ins. Co.*, 307 F. App'x 562, 564 (2d Cir. 2009) (citations and marks omitted). Here, there is no reason to disregard

---

[11] DarkPulse has never argued that the Delaware choice-of-law clause was obtained through fraud. (*See* A-28; A-444.)

the parties' choice-of-law clause selecting Delaware—and DarkPulse has offered none. Both parties are incorporated in Delaware (FAC ¶¶ 17, 19, A-372) and application of Delaware law would not violate any New York public policy (*supra* Section I.A.4).[12]

Applying Delaware law, there is no question that Count IV fails to allege an underlying unlawful debt. As the District Court correctly found, Delaware has not adopted a usury statute, and DarkPulse "points to no other provision in which to ground its RICO claim" as to the 2021 Note. (A-30.)

## 2. DarkPulse Failed to State a Claim as to Any of the Remaining Elements of RICO.

Even if somehow New York law applied here to the 2021 Note, DarkPulse's RICO claim also fails to state a claim because DarkPulse has not alleged a "person" distinct from the "enterprise"—that FirstFire is in the business of lending at usurious

---

[12] If DarkPulse is correct that the Delaware choice-of-law clause in the Amendment is void, the New York choice-of-law clause contained in the original pre-Amendment contract would also presumably be void. DarkPulse has never provided a basis for applying New York law, apart from the choice-of-law clause in a contract that it alleges is void *ab initio*. (Br. at 12, 40; A-446–50.) Nor does the FAC provide sufficient information for a court to conduct the required "center of gravity" analysis to determine what state law applies, such as the "place of contracting, negotiation and performance." *Haymount Urgent Care PC v. GoFund Advance, LLC* ("*Haymount III*"), 2023 WL 185499, at *4 (S.D.N.Y. Jan. 13, 2023). The FAC includes a bare allegation that DarkPulse's principal place of business is New York (FAC ¶ 17, A-372), which is belied by the fact that DarkPulse is actually headquartered in Houston, Texas, and DarkPulse had not even registered to do business in New York when it made this allegation. (A-426–27; SA-116; SA-118.)

rates—and has not sufficiently alleged that the 2021 Note is in fact usurious. 18 U.S.C. § 1962(c). Even though Judge Ramos did not address these issues, they were raised on the motion to dismiss and they are also dispositive of DarkPulse's claims.

*First*, an entity cannot be both the alleged "enterprise" and the liable "person." It is well settled that "the plain language and purpose of the [RICO] statute contemplate that a <u>person</u> violates the statute by conducting an <u>enterprise</u> through a pattern of criminality, so a corporate person cannot violate the statute by corrupting itself." *U1it4less, Inc. v. Fedex Corp.*, 871 F.3d 199, 205 (2d Cir. 2017) (emphasis in original) (citations and marks omitted); *Riverwoods Chappaqua Corp. v. Marine Midland Bank, N.A.*, 30 F.3d 339, 344 (2d Cir. 1994). Here, DarkPulse alleges that FirstFire is the "enterprise" within the meaning of RICO (FAC ¶ 9, A-371), and as a result, FirstFire cannot also be the "person" liable under Section 1962(c). Furthermore, as "[c]orporations can only act through their agents . . . a plaintiff may not circumvent the distinctness requirement by alleging a RICO enterprise that consists merely of a corporate defendant associated with its own employees or agents carrying on the regular affairs of the defendant." *Lynn v. McCormick*, 760 F. App'x 51, 53 (2d Cir. 2019).

Moreover, each element of a RICO claim must be alleged as to each defendant. *Lynn v. McCormick*, 2017 WL 6507112, at *5–6 (S.D.N.Y. Dec. 18,

2017).  Here, the FAC alleges the elements of RICO only as to FirstFire, not Mr. Fireman.  (FAC ¶¶ 72–79, A-382–84).  Allowing a civil RICO claim to proceed against Mr. Fireman, the only "person" alleged that is a distinct entity from the "enterprise," would permit DarkPulse a backdoor around the requirement that the enterprise and person must be distinct.

*Second*, DarkPulse makes the conclusory assertion that FirstFire "has made loans to other issuers that also violate New York's usury laws" based on "information and belief."  (FAC ¶ 71, A-382.)  But this bare, unsupported assertion does not properly plead that FirstFire and Mr. Fireman are engaged in the business of lending money at double the legal rate under the applicable law.  *Durante Bros. & Sons, Inc. v. Flushing Nat'l Bank*, 755 F.2d 239, 250 (2d Cir. 1985); *Contract Transport Servs., Inc. v. New Era Lending LLC*, 2018 WL 11226077, at *6–7 (S.D.N.Y. Oct. 26, 2018) (dismissing RICO claim with prejudice for "fail[ing] to specify any other individuals or companies to whom Defendants have lent money or the usurious interest rates attached to any other loans made by Defendants").  DarkPulse has not alleged a single agreement entered into by FirstFire either governed by New York law or usurious under the relevant state law.  (*See, e.g.*, SA-144 (governing law is Nevada).)

### 3. The 2021 Note is Not Usurious as a Matter of Law.

Even if the Court finds that DarkPulse is in fact raising usury as an affirmative defense (and not an affirmative claim), and New York law (not Delaware law) governs, the First Amended Complaint still fails to plead that the 2021 Note is usurious.[13] There is no dispute that the 2021 Note has a stated interest rate of "8% or 10% per annum" (FAC ¶ 79, A-383–84), far below the usury rate of 25% per annum. To fabricate an allegedly usurious rate, DarkPulse added to these stated rates the fixed default discount and the "commitment shares"—*i.e.*, calculating the interest rate factoring in DarkPulse's default on the 2021 Note and its conversion to stock. (FAC ¶ 79 nn.20–21, A-383.) But New York law does not permit such aggregation. The affirmative defense of usury does not apply where the terms of a note impose a rate of interest "in excess of the statutory maximum ***only after default***." *Beaufort Cap. Partners LLC v. Oxysure Sys., Inc*., 2017 WL 913791, at *3 (S.D.N.Y. Mar. 7, 2017) (emphasis added); *see also 1077 Madison Street, LLC v. Daniels*, 954 F.3d 460, 465 (2d Cir. 2020).[14]

Thus, the "conversion discount" DarkPulse used in its interest calculation for the 2021 Note is flawed—the conversion price without DarkPulse's default would

---

[13] The District Court did not reach this issue of whether DarkPulse sufficiently pled that the 2021 Note was in fact usurious under New York law, having dismissed Counts I, II, and IV on other grounds. (*See* A-30 n.23.)

have been $0.015 per share.  (A-106.)  This was the average trading price for the week prior to the 2021 Note's execution, meaning that FirstFire bore significant market risk and could expect, at most, a very small profit if not a loss from the conversion of the 2021 Note.  Moreover, in speaking to the elements of a usury claim, in *Adar Bays*, the New York Court of Appeals emphasized that fixed-price conversion options do "not render the loan usurious on its face" and the analysis instead depends on "usurious intent." *Adar Bays, LLC*, 179 N.E.3d at 624.  DarkPulse fails to allege this entirely.

## II.  THE DISTRICT COURT ALSO CORRECTLY HELD THAT DARKPULSE FAILED TO PLEAD A SECTION 29(B) CLAIM.

In addition to properly dismissing Counts I and II based on the Delaware exclusive forum provision, the District Court also correctly dismissed these Counts because DarkPulse failed to plead Section 29(b) claims as to the 2021 Note, given that the 2021 SPA did not require FirstFire to act as an unregistered dealer.  To establish a violation of Section 29(b), DarkPulse must show that "(1) the contract involved a prohibited transaction, (2) [it] is in contractual privity with the defendant, and (3) [it] is in the class of persons the Act was designed to protect." *EMA Fin.,*

---

[14] Although *Adar Bays* found that "the value of the floating-price convertible options should be included in the determination of interest," *Adar Bays LLC*, 179 N.E.3d at 621, that case did not address the question at issue here, namely, *when* the affirmative usury defense applies.

*LLC v. Vystar Corp., Inc.*, 2021 WL 1177801, at \*2 (Mar. 29, 2021) (citations omitted). DarkPulse alleges that the "prohibited transaction" was that the 2021 Note and 2021 SPA violated Section 15(a).

There is no private right of action under Section 15(a). *Cyber Apps World, Inc. v. EMA Fin., LLC*, 2022 WL 17584012, at \*2 (S.D.N.Y. Dec. 9, 2022) ("While section 15(a) imposes a duty on those acting as brokers and dealers to register, it does not establish a private right of action."). But DarkPulse attempts to use Section 29(b) to create a private right of action where none exists to receive a windfall. *EMA Fin., LLC v. NFusz, Inc.*, 509 F. Supp. 3d 18, 37 n.22 (S.D.N.Y. 2020) ("This Court is highly skeptical of NFusz's attempt to use the threat of a hypothetical SEC action to vitiate contracts that were lawful at the time they were executed." (citation and marks omitted)).

The District Court correctly held that DarkPulse's Section 29(b) claims fails as neither the 2021 Note nor the 2021 SPA involved a prohibited transaction, as neither required FirstFire to act as an unregistered dealer. And while the District Court did not reach this argument, DarkPulse's claims additionally fail as FirstFire is not a dealer within the meaning of the Exchange Act. The District Court's ruling should be affirmed.

**A.** **DarkPulse Asks the Court to Overturn Well-Settled Law that a Section 29(b) Claim Fails Where the Contract Does Not Require a Violation of the Exchange Act.**

Under Section 29(b), "only unlawful *contracts* may be rescinded, not unlawful *transactions* made pursuant to lawful contracts." *Pompano-Windy City Partners, Ltd. v. Bear Stearns & Co.*, 794 F. Supp. 1265, 1288 (S.D.N.Y. 1992) (quoting *Zerman v. Jacobs*, 510 F. Supp. 132, 135 (S.D.N.Y. 1981), *aff'd*, 672 F.2d 901 (2d Cir. 1981)); *EMA Fin., LLC v. AppTech Corp.*, 2022 WL 4237144, at *7 (S.D.N.Y. Sept. 13, 2022). Neither the 2021 Note nor the 2021 SPA require FirstFire to act as a dealer in violation of Section 15(a). Section 15(a) prohibits "any broker or dealer" from "effect[ing] any transaction in . . . . any security," unless they are registered with the Securities and Exchange Commission ("SEC"). 15 U.S.C. § 78o(b)(7). Under federal law, "[t]he term 'dealer' means any person engaged in the business of buying and selling securities . . . for such person's own account through a broker or otherwise." 15 U.S.C. § 78c(a)(5)(A). DarkPulse points to no provision of the relevant agreements that requires FirstFire to be "engaged in the business of buying and selling securities" without registering with the SEC. In fact, the 2021 SPA even prohibits DarkPulse from stating to "any person, institution,

governmental or other entity" that FirstFire "is currently, or ever has been a broker-dealer" under the Exchange Act.  (A-129.)

Judge Ramos was at least the fifth judge in the Southern District of New York to hold that contracts nearly identical to the ones at issue here may not be rescinded under Section 29(b) as they do not require a violation of Section 15(a).  (A-25–27.) *LG Cap. Funding, LLC v. ExeLED Holdings, Inc.*, 2018 WL 6547160, at *1 (S.D.N.Y. Sept. 28, 2018), *vacated on other grounds*, 2022 WL 16751904 (S.D.N.Y. Nov. 7, 2022); *Parallax Health Scis., Inc. v. EMA Fin., LLC*, 2022 WL 1446521, at *14 (S.D.N.Y. Feb. 24, 2022) (noting that the First, Fifth, and Ninth Circuits' views on Section 29(b) "are not inconsistent with those of the courts in the Second Circuit"), *R. & R. adopted as modified*, 2022 WL 2531344 (S.D.N.Y. Apr. 7, 2022); *AppTech Corp.*, 2022 WL 4237144, at *6–7; *EMA Fin., LLC v. Vystar Corp.*, 336 F.R.D. 75 (S.D.N.Y. 2020); *Found. Ventures, LLC v. F2G, LTD.*, 2010 WL 3187294, at *7 (S.D.N.Y. Aug. 11, 2010); *see also Underwood v. Coinbase Glob., Inc.*, 2023 WL 1431965, at *12 (S.D.N.Y. Feb. 1, 2023) ("[V]iewed facially, the customer agreement at issue here is a lawful one." (citation and marks omitted)); *Acuitas Cap., LLC v. Ideanomics, Inc.*, 2023 WL 4373314, at *1 (S.D.N.Y. June 21, 2023) (denying motion to compel discovery on whether plaintiff is an unregistered dealer as "[t]he SPA . . . is not an inherently unlawful contract subject to rescission

under Section 29(b)").  There has thus been unanimity among district court judges that where the contract is facially lawful, there is no Section 29(b) violation.

These cases are based on decades of case law interpreting Section 29(b), holding that only unlawful contracts may be rescinded.  *Zerman*, 510 F. Supp. at 135 ("[U]nder § 29(b) of the Exchange Act, only unlawful contracts may be rescinded, not unlawful transactions made pursuant to lawful contracts."); *Tanzanian Royalty Expl. Corp. v. Crede CG III, Ltd.*, 2019 WL 1368570, at *13 (S.D.N.Y. Mar. 26, 2019) ("Courts in this circuit have repeatedly held that contracts can be held unenforceable under § 29(b) only when the contract 'on its face' requires the performance of an illegal act." (citations omitted)).  This aligns with the principal Section 29(b) is meant to codify—facially illegal contracts are unenforceable.  *See AppTech Corp.*, 2022 WL 4237144, at *7; *Globaltex Grp. Ltd. v. Trends Sportswear Ltd.*, 2010 WL 1633438, at *2 (E.D.N.Y. Apr. 21, 2010) ("When the contract is facially valid, illegality bars enforcement only when it is central to or a dominant part of the plaintiff's whole course of conduct in performance of the contract." (citation and marks omitted)).

There was no prohibited transaction here that would permit DarkPulse to void the 2021 SPA.  This is buttressed by DarkPulse's continued use of convertible notes as financings past the 2021 SPA.  *Underwood v. Coinbase Glob., Inc.*, 2023 WL 1431965, at *12 (S.D.N.Y. Feb. 1, 2023) ("[P]laintiffs admit continuing to use the

Coinbase platforms since filing the original lawsuit."). Between July 2018 and November 2021, DarkPulse entered into approximately 20 different convertible notes with multiple investment funds, including the Notes with FirstFire that are the subject of this dispute. (A-408.)

### B. DarkPulse's Distinction Between Contracts "Made in Violation" and "Performed in Violation" of the Exchange Act Is Meritless.

DarkPulse contends that contracts made in violation of the Exchange Act are void, but then fails to explain how the agreements here were made in violation of the Exchange Act. (Br. at 49–50.)

DarkPulse relies solely on *Eastside Church of Christ v. National Plan, Inc*., but courts in this Circuit have interpreted *Eastside* to stand for the proposition that while some contracts may not by their direct terms "violate the Act, [but] there could be no performance under the contract without violating the Act." *Slomiak v. Bear Stearns & Co.*, 597 F. Supp. 676, 682 (S.D.N.Y. 1984) (citing *Eastside Church of Christ v. Nat'l Plan, Inc.*, 391 F.2d 357 (5th Cir. 1968), *cert. denied*, 393 U.S. 913 (1968)).[15] This is not the case here, where even under DarkPulse's strained interpretation, the 2021 SPA and the 2021 Note could have been performed without

---

[15] *Eastside* also provides little to no analysis to support its conclusions. *Eastside*, 391 F.2d at 362.

a violation of the Exchange Act—i.e., as the transaction was performed, with a non-dealer effecting a transaction in securities.

DarkPulse next describes contracts "performed in violation" of the Exchange Act as follows: "[T]he classic example of a 29(b) /15(a) claim is brought by a customer seeking rescission of a brokerage contract where the customer finds out his broker (typically after the broker screws up) is not registered with the SEC." (Br. at 50.)

The only case cited for this proposition is a Fifth Circuit case that courts in this Circuit have distinguished as it involved a contract that could not have been performed without a violation of the Exchange Act. *Slomiak*, 597 F. Supp. at 682; *NFusz, Inc.*, 509 F. Supp. 3d at 37 n.22 (citing *Regional Properties, Inc. v. Financial and Real Estate Consulting Co.*, 678 F.2d 552 (5th Cir. 1982), and noting "a case not inconsistent with this District's case law").

### C. DarkPulse's Argument That FirstFire Is an Unregistered Dealer Assumes What It Concludes.

As DarkPulse concedes, to show the 2021 SPA includes a "prohibited transaction" in violation of Section 15(a) of the Exchange Act, it must show that FirstFire is an unregistered broker-dealer who effected a transaction in securities. (Br. at 53.) DarkPulse's entire analysis misses the mark—DarkPulse focuses entirely on the argument that the 2021 SPA "requires" FirstFire to effect a transaction in securities. The District Court already rejected this argument as, even

43

if accepted as true, this consideration is only half of the equation—the 2021 SPA does not require FirstFire to act as an unregistered dealer. (A-27.) Because the 2021 SPA does not require FirstFire to violate Section 15(a) of the Exchange Act, its Section 29(b) claims fail.

DarkPulse appears to acknowledge this additional requirement of Section 15(a), but then asks the Court to assume that FirstFire is a "dealer," and so the 2021 SPA is illegal on its face. (Br. at 53, 59.) DarkPulse's argument essentially repeats an argument squarely in *NFusz, Inc*., where the court denied defendant's motion to amend its answer to include a counterclaim under Section 29(b). *NFusz, Inc.*, 509 F. Supp. 3d at 37. In so holding, the Court rejected defendant's argument that registration was required to enter into the agreements themselves, as Judge Naomi Reice Buchwald agreed that "the judge herself . . . could have been the lender in the transaction." *Id*. at 37 n.22. Likewise, here, DarkPulse claims that the 2021 SPA and the 2021 Note violate Section 29(b) based on the fact that they transact in securities and asks the Court to assume this is sufficient to show these agreements violate the statute on their face.

DarkPulse asks this Court to reverse the District Court's "[b]lind [r]eliance" on two cases from SDNY, but fails to adequately distinguish those cases. DarkPulse criticizes *LG Capital* and *Vystar* as they failed to appreciate that the contracts were "themselves securities as defined in the Act." (Br. at 60–62.) DarkPulse argues that

these courts concluded that "it is not necessarily unlawful for an unlicensed securities broker-dealer 'to act as a broker-dealer.'" (*Id.* at 62.)  But this assumes that FirstFire is a broker-dealer, as DarkPulse cannot seriously argue that it is illegal for any unregistered *entity* to transact in securities.  DarkPulse's analysis thus asks the Court to assume that entering into the 2021 SPA and the 2021 Note rendered FirstFire a dealer, based on the single purchase of the Note, which in turn made the transaction illegal.  Essentially this would mean that such transactions, as a matter of law, are always a violation of Section 15(a) unless the lending party is a registered dealer.  This circular logic is without any basis in law and should be rejected.  *Vystar*, 336 F.R.D. at 81–82 ("Vystar does not explain why the act of converting shares violates the broker-dealer provision of the Exchange Act.").

Because nothing in the agreements required a violation of Section 15(a), the District Court correctly dismissed DarkPulse's Section 29(b) claims.  (A-26–27.)

### D. FirstFire Is Not a Dealer.

Although not addressed by the District Court, even under DarkPulse's baseless analysis, FirstFire is demonstrably not a dealer within the meaning of the Exchange Act.  Pursuant to federal law, "[t]he term 'dealer' means any person engaged in the business of buying and selling securities . . . for such person's own account through a broker or otherwise."  15 U.S.C. § 78c(a)(5)(A).  A "trader" by contrast, for which there is an exception from the definition of dealer, is a party who

"buys and sells securities for his or her own account, either individually or in a fiduciary capacity, but not as part of a regular business." S.E.C., Guide to Broker-Dealer Registration (Apr. 2008), http:// www.sec.gov/divisions/marketreg/ bdguide.htm. An entity may meet the definition of a dealer by, among other things, underwriting or acting as a "market maker" for securities. *Id.*

FirstFire engages in none of these activities, nor has DarkPulse pled that FirstFire does so. While DarkPulse claims that Defendants "sold more than 1 billion newly-issued shares of stock obtained from those notes into the public market," the FAC does not describe even a single stock sale. (FAC ¶ 66, A-381.) Rather, the FAC shows that out of $34 million in principal provided to various issuers, FirstFire converted only $1.4 million or 4% of the total amount provided. (A-171.) This is a far cry from "buying and selling securities" as part of its regular business. Instead, it merely shows that FirstFire acts as a trader. *Found. Ventures, LLC*, 2010 WL 3187294, at *7 ("[T]he record here does not indicate that [defendant] regularly engages in securities transactions."). Rather than FirstFire buying and selling DarkPulse stock to "make a market," DarkPulse *hired and paid a registered broker-dealer* to engage FirstFire to enter into the 2021 Note. (SA-112.) Moreover, in Section 3.e of the 2021 SPA, DarkPulse represents and warrants to FirstFire that "so long as any amount on the [2021] Note remains outstanding, the Company shall not to any person, institution, governmental or other entity, state, claim, allege, or in any

46

way assert, that [FirstFire] is currently, or ever has been a broker-dealer under the Securities Exchange Act of 1934." (A-129.) FirstFire was not acting as an unregistered dealer in violation of Section 15(a).

### E. DarkPulse Is Not the "Unwilling Innocent" Party Section 29(b) Claim's Require.

A further basis for dismissing under 29(b) not reached by the District Court is that "[o]nly an unwilling innocent may seek to rescind a contract under section 29(b)." *Found. Ventures, LLC*, 2010 WL 3187294, at *6. DarkPulse is far from an unwilling innocent. The 2021 SPA contains the explicit representation that FirstFire is not a broker-dealer and DarkPulse warranted that it would not "to any person, institution, governmental or other entity, state, claim, allege, or in any way assert, that [FirstFire] is currently, or ever has been a broker-dealer under" the Exchange Act. (A-129.) In addition, DarkPulse has entered into dozens of these kinds of notes over the past several years. (Background I.A n.3.)

To rescind a contract under Section 29(b), a party must be "an unwilling innocent party to the contract." *Buffalo Forge Co. v. Ogden Corp.*, 717 F.2d 757, 759 (2d Cir. 1983), *cert. denied*, 464 U.S. 1018 (1983). Where, as here, a party "willingly entered into the questioned contract and knew all of the facts which [it] now claims constitute 'manipulation' . . . it may not invoke the provisions of section 29(b) to challenge the contract." *Buffalo Forge Co. v. Ogden Corp.*, 555 F. Supp. 892, 906 (W.D.N.Y. 1983), *aff'd*, 717 F.2d 757 (2d Cir. 1983); *see also Cary Oil*

*Co., Inc. v. MG Refining & Mktg., Inc.*, 230 F. Supp. 2d 439, 486 (S.D.N.Y. 2002) ("[T]here is no claim that the contract was entered into because of any misrepresentations. Hence it would be too glib to talk about an 'innocent party,' at whose option the contract is voidable.").  DarkPulse was not unwilling or innocent (nor has it alleged such); it was fully aware of FirstFire's status.

## **<u>CONCLUSION</u>**

For the foregoing reasons, this Court should affirm the District Court's decision below.

Dated:  July 31, 2023

Respectfully submitted,

<u>s/ *Aaron H. Marks* _____</u>
Aaron H. Marks, P.C.
Byron Pacheco
Julia Harper
Kirkland & Ellis LLP
601 Lexington Avenue
New York, NY 10022

*Attorneys for Appellees FirstFire*
*Global Opportunities Fund, LLC, and*
*Eli Fireman*

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because, as counted by the Microsoft Word word-count tool, this brief contains 11,482 words, exclusive of the cover page, Corporate Disclosure Statement, Table of Contents, Table of Authorities, signature block, and Certificate of Compliance. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5)(A) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in Times New Roman 14-point font.

Dated: July 31, 2023

s/ *Aaron H. Marks* _____
Aaron H. Marks, P.C.
*Attorney for Defendants-Appellees*

49