# EXHIBIT A

# Ontario County Clerk Recording Page

**Return To**

SUE LERKINS
99 Exchange Blvd.
Rochester, NY 14614

**Pamela Keefe, Acting County Clerk**
Ontario County Clerk
20 Ontario Street
Canandaigua, New York  14424
(585) 396-4200

Document Type: **ORDER - DISMISSAL**

Receipt Number: 698535

| Plaintiff |
|---|
| SAMSON LENDING LLC |

| Defendant |
|---|
| GREENFIELD MANAGEMENT LLC |

| Fees |
|---|
| Total Fees Paid:                              $0.00 |

Control #:     202309060055
Index #:       134457-2022

State of New York
County of Ontario

EFiling through NYSCEF with a total page count of **17**.

*Pamela Keefe* (signature)

**Acting Ontario County Clerk**

*This sheet constitutes the Clerk's endorsement required by section 319 of the Real Property Law of the State of New York*

SL

**Do Not Detach**

STATE OF NEW YORK
SUPREME COURT COUNTY OF ONTARIO

SAMSON LENDING LLC,

        Plaintiff,

                **Decision and Order**

-vs-                Index No. 134457-2022

GREENFIELD MANAGEMENT LLC,
GREENFIELD SENIOR LIVING, INC.
GREENFIELD REFLECTIONS OF WOODSTOCK
LLC, and MATHEW PEPONIS,

        Defendants.

**Appearances**:

Ariel Bouskila, Esq., Berkovitch & Bouskila, PLLC, for the Plaintiff
Albena Petrakov, Esq., Offit Kurman, P.A., for Defendants

**Daniel J. Doyle, J.**

    Samson Lending LLC (hereinafter "plaintiff") initiated this action by the filing of a Summons and Complaint in November of 2022 alleging that the defendants breached a loan agreement (hereinafter "agreement") and seeking resultant damages and the awarding of attorneys' fees against the corporate defendants and the personal guarantor.

    Defendants Greenfield Management LLC, Greenfield Senior Living, Inc., Greenfield Reflections of Woodstock LLC, and Mathew Peponis (personal

1

guarantor) (hereinafter "defendants") now move pursuant to CPLR Rule 3211(a)(1) and CPLR Rule 3211(a)(7) to dismiss the complaint.

For the reasons set forth below, the motion to dismiss is granted, the complaint is dismissed, and the agreement is declared void.

*Relevant Facts*

According to the allegations in the complaint[1], plaintiff and the corporate defendants entered a loan agreement wherein the corporate defendants agreed to pay plaintiff $1,742,000 over the course of 52 weeks in exchange for a loan of $1,300,000[2], a stated interest rate of 34%, with the terms of the corporate defendants' compliance guaranteed by the individual defendant, Mathew Peponis.[3]

The agreement contained a choice-of-law and a venue and jurisdiction provision which would require the application of Virginia law to the agreement. That provision stated:

> 31. GOVERNING LAW; CONSENT TO JURISDICTION AND VENUE. Borrower and Lender agree that this Agreement and Borrowers Loan will be governed by law of the State of Virginia. These laws will apply based on the residence of the Borrower. Borrower and Lender agree that any action or proceeding to enforce or arising out of this

---

[1] "When considering these pre-answer motions to dismiss the complaint for failure to state a cause of action, we must give the pleadings a liberal construction, accept the allegations as true and accord the plaintiffs every possible favorable inference (*see Goshen v. Mutual Life Ins. Co. of N.Y.*, 98 N.Y.2d 314, 326, 746 N.Y.S.2d 858, 774 N.E.2d 1190 [2002])." (*Chanko v. Am. Broad. Companies Inc.*, 27 NY3d 46, 52, [2016].)
[2] Less closing fees totaling $32,500.
[3] See, generally, Summons and Complaint with exhibits A and B (NYSCEF Docket #s 1-3).

Agreement shall be brought in any court of the State of New York, and Borrower waives personal service of process. Borrower and Lender agree that venue is proper in such courts. Borrower and Guarantor agrees that Venue is proper and convenient in the State of New York and waives the right to challenge venue based on forum or convenience. Borrower and Guarantor agree to accept service of process via certified mail the address on the first page of this Agreement. Borrower and Guarantor submit to the Personal Jurisdiction of the Courts in the state of New York for all claims, actions or suits that arise out of or in connection to this Agreement, and waive any challenge to the personal jurisdiction of the courts of New York.[4]

The defendants now move to dismiss the complaint, arguing that the interest rate under the loan agreement (34%) violates New York's public policy against criminal usury and that this vitiates the application of the agreement's choice-of-law provision requiring application of New York law to the agreement.[5] Plaintiff argues that the choice-of-law provision must be honored, as Virginia law does account for usury, and alternatively argues that should New York law apply, the agreement should be modified according to its terms to allow the maximum interest rate allowable under New York law.[6]

---

[4] See Loan Agreement attached as Exhibit A to the Complaint (NYSCEF Docket # 2) at paragraph 31.

[5] The defendants argue that the actual interest rate is 37.8% as New York courts must determine whether additional monies paid by the borrower ("fees") should be included in the interest calculation (*see e.g. Hammelburger v. Foursome Inn Corp.*, 54 NY2d 580 [1981])). Resolution of this issue is unnecessary as the interest rate stated in the loan agreement, 34%, clearly exceeds New York's criminal usury limit of 25%. (See also *Sweet Baby Lightning Enterprises LLC v. Keystone Cap. Corp.*, 2022 WL 2181450, at *3 [S.D.N.Y. June 15, 2022]: "the Court must consider "all consideration to be paid in exchange for a loan," not just consideration that is explicitly labeled as interest." *See also* Banking Law § 14-a[2]: "2. The rate of interest as so prescribed under this section shall include as interest any and all amounts paid or payable, directly or indirectly, by any person, to or for the account of the lender in consideration for the making of a loan or forbearance as defined by the superintendent pursuant to subdivision three of this section.")

[6] Plaintiff has not cross-moved for reformation of the contract.

3

### *New York Has a Strong Public Policy Against Usurious Contracts*

As the Court of Appeals recently observed in *Adar Bays, LLC v. GeneSYS ID, Inc.*, (37 NY3d 320 [2021]) New York has a long history prohibiting usury. Since at least 1717 various New York legislatures have repeatedly passed legislation to address (and prohibit) usury. Over the intervening years, while other states repealed their usury laws, New York's legislature refused to lessen the protections afforded by the usury statutes. (*See Adar Bays*, 37 NY3d at 329.)

Although in 1850 New York's legislature passed legislation prohibiting corporations from raising the defense of usury, due to the proliferation of the practice of "loan sharks" requiring individuals to incorporate to avoid the usury statutes, New York, in 1965, restored the defense of usury to corporations in civil actions if the interest rate charged for the loan exceeded the criminal usuary rate of 25%.[7] In 1980 an exception was passed for loans greater than $2.5 million as the legislature believed "that borrowers of more than $2.5 million were "capable of protecting their own interests" without the protection of the usury laws (Banking Department Mem on Bill Before the Governor for Executive Action, Bill Jacket, L 1980, ch 369)." (*Adar Bays*, 37 NY3d at 331.)[8]

---

[7] Notably, as the Court of Appeals observed in *Adar Bays*: "[i]nsecure businesses that had difficulty finding financing elsewhere naturally also proved an easy target for such predatory lending (1965 N.Y. Legis Ann at 50; see also Syndicate Loan–Shark Activities & New York's Usury Statute, 66 Colum L Rev 167, 168 [1966])." (*Adar Bays*, 37 N.Y. at 330.)

[8] By maintaining the criminal defense for usury for loan less than $2.5 million, the Legislature necessarily determined that borrowers of less than that amount were not always capable of protecting their own interests.

4

As the Court of Appeals noted, "the legislature did not alter the 300-year-old rule that, where usury is established, the transaction is entirely void, preventing recovery of both principal and interest." (*Id.*) Thus, historically, an usurious loan in New York was considered void ab initio and the borrower was relieved of repayment of the principle.[9] A harsh remedy indeed, but one that reflects "the legislature's consistent condemnation of the "evils of usury" (*Seidel v. 18 E. 17th St. Owners*, 79 N.Y.2d 735, 740-741, 586 N.Y.S.2d 240, 598 N.E.2d 7 [1992]). The forfeiture of interest and capital serves a strong deterrent effect—one the legislature has repeatedly affirmed (*id.*)."

Thus, New York usury statutes are a deeply rooted tradition designed to protect both individuals and corporations -especially insecure businesses in need of financial assistance – from the "evils of usury". (*Id.*)[10] "The purpose of usury laws,

---

[9] *See also Seidel v. 18 E. 17th St. Owners, Inc.*, 79 NY2d 735, 740 (1992): "New York usury laws historically have been severe in comparison to the majority of States (1960 Report of N.Y. Law Rev.Commn., 1960 Legis.Doc. No. 65, at 77), reflecting the view of our Legislature that the prescribed consequences are necessary to deter the evils of usury." The Court is not rending an opinion on the propriety of a cause of action in Virginia sounding in unjust enrichment. (*See e.g., James G. Davis Constr. Corp. v. FTJ, Inc.*, 298 Va. 582, 591 [2020]: "the doctrine of unjust enrichment effects a "contract implied in law" requiring one who accepts and receives goods, services, or money from another to make reasonable compensation for those services. *See Po River Water & Sewer Co. v. Indian Acres Club of Thornburg, Inc.*, 255 Va. 108, 495 S.E.2d 478 (1998). It arises from the simple principle that one person may not "enrich himself unjustly at the expense of another." *Rinehart v. Pirkey*, 126 Va. 346, 351, 101 S.E. 353 (1919).")

[10] *See also Power Up Lending Grp., Ltd. v. All. Bioenergy Plus, Inc.*, No. CV183601JMAAYS, 2019 WL 1322621, at *5 (E.D.N.Y. Feb. 28, 2019), report and recommendation adopted, No. 18CV3601JMAAYS, 2019 WL 1317456 (E.D.N.Y. Mar. 22, 2019): "A number of cases have applied New York law - despite the parties' choice of another forum's law - because New York's usury prohibition constitutes a fundamental public policy. *See Am. Equities Grp.*, 2004 WL 870260, at *8 ("New York has a strong public policy against interest rates which exceed 25%, which policy must be enforced.") (internal quotation marks omitted); *In re McCorhill Publ'g, Inc.*, 86 B.R. 783, 793 (Bankr. S.D.N.Y. 1988)

5

from time immemorial, has been to protect desperately poor people from the consequences of their own desperation." (*Schneider v. Phelps*, 41 NY2d 238, 243 [1977].)

### *The Loan Agreement would be Criminally Usurious under New York Law*

The loan agreement's stated interest rate of 34% would violate New York's criminal usury rate limit of 25%. (Penal Law § 190.40.) As the loan agreement was for less than $2.5 million, the laws prohibiting criminally usurious interest in New York would be applicable to the loan agreement herein (if New York law applies). (*See* GOL § 5-501[6][b]: "No law regulating the maximum rate of interest which may be charged, taken or received, including section 190.40 and section 190.42 of the penal law, shall apply to any loan or forbearance in the amount of two million five hundred thousand dollars or more. . .") New York law prohibits loan agreements wherein the interest rate exceeds 25%. "In other words, although section 5-521(1) "disallows" corporations from raising the defense of usury with respect to a loan charging less than 25% interest (*Fischer v. Panasian Communications*, 87 N.Y.2d 958,

---

(holding that enforcing New Jersey law would violate New York's "strong public policy against interest rates which exceed 25%, which policy must be enforced"); *Assih*, 893 N.Y.S.2d at 446 ("New York has a strong public policy against interest rates which are excessive and this is a policy the courts must enforce."); *Clever Ideas, Inc. v. 999 Rest. Corp.*, No. 0602302/06, 2007 N.Y. Misc. LEXIS 9248, at *2–4 (Sup. Ct. N.Y. Cty. Oct. 12, 2007) (choice of Illinois law not given effect in part because New York's usury prohibition is a fundamental public policy); *N. Am. Bank, Ltd. v. Schulman*, 123 Misc.2d 516, 474 N.Y.S.2d 383, 387 (Cty. Ct. Westchester Cty. 1984) ("[T]he policy underlying our state's usury laws is in fact of a fundamental nature.")"

960, 641 N.Y.S.2d 590, 664 N.E.2d 501 [1996]), section 5–521(3) renders section 5–521(1) inapplicable where the interest rate is greater than 25%, meaning corporations fall within the purview of section 5–501 with respect to those usurious loans." (*Adar Bays, LLC v. GeneSYS ID, Inc.*, 37 N.Y.3d at 332.)[11]

***The Agreement's Choice-of-Law Provision is Void***

Parties to a contract are typically free to enter into choice-of-law provisions that will be enforced by New York courts. (*Ministers & Missionaries Ben. Bd. v. Snow*, 26 NY3d 466, 470 [2015]: "We begin with the basic premises that courts will generally enforce choice-of-law clauses and that contracts should be interpreted so as to effectuate the parties' intent (*see Welsbach Elec. Corp. v. MasTec N. Am., Inc.*, 7 N.Y.3d 624, 629, 825 N.Y.S.2d 692, 859 N.E.2d 498 [2006]). In a case based on New York law, the United States Supreme Court held that a choice-of-law provision in a contract "may reasonably be read as merely a substitute for the conflict-of-laws analysis that otherwise would determine what law to apply to disputes arising out of the contractual relationship" (*Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 59, 115 S.Ct. 1212, 131 L.Ed.2d 76 [1995]).")

"The freedom to contract, however, has limits. Courts will not, for example, enforce agreements that are illegal or where the chosen law violates "some fundamental principle of justice, some prevalent conception of good morals, some

---

[11] See also Limited Liability Company Law § 1104.

7

deep-rooted tradition of the common weal" (*Cooney*, 81 N.Y.2d at 78, 595 N.Y.S.2d 919, 612 N.E.2d 277, *quoting Loucks v. Standard Oil Co. of N.Y.*, 224 N.Y. 99, 111, 120 N.E. 198 [1918]; see generally Restatement [Second] of Conflict of Laws § 187[2])." (*Welsbach Elec. Corp. v. MasTec N. Am., Inc.*, 7 NY3d 624, 629 [2006].)

The agreement herein states that Virginia law is to be applied, and Virginia law would allow enforcement of the interest rate mandated by the loan agreement.[12] Defendants argue that regardless of the agreement's provision that Virginia substantive law would apply to the agreement's terms, that the application of Virginia law (which would allow a 34% interest rate) would be so violative of New York's public policy that the choice-of-law provision is invalid.

The Court agrees.

Certainly, New York has a sufficient nexus to the case to allow this Court to consider the defendants' public policy argument. Plaintiff is a corporation authorized to conduct business in New York, is located in New York, made all its business decisions relevant to the agreement in New York, and the loan was made in New York.[13] In short, the entire loan agreement and resultant transactions were conducted in New York. (*See e.g. Schultz v. Boy Scouts of Am., Inc.*, 65 NY2d 189, 203

---

[12] The Court is mindful of the allowable inference that the plaintiff, as a New York lender, agreed to the choice-of-law provision in order to avoid application of New York's usury statutes in order to seek a 34% interest rate.

[13] See the agreement at paragraph 38.

8

[1985]: "In *Straus & Co.*, [254 N.Y. 407, 173 N.E. 564] we refused to enforce a contractual provision releasing the defendant shipper from liability for its own negligence, valid under otherwise applicable British law but invalid under the laws of New York, when the plaintiff was a New York company, the final place of shipment was New York, and the defendant had chosen to do business here by way of shipping goods into the State.") The prohibition against usury contained in GOL § 5-501 clearly states "[n]o person or corporation" shall charge an usurious interest rate, and there is not a geographic limitation on that language limiting its application to only New York residents. Thus, New York has a strong public policy to prohibit corporations that are conducting business in the state, such as plaintiff, from charging usurious interest rates no matter whether the borrower is a New York resident or a New York non-domiciliary.

"Under the public policy exception, when otherwise applicable foreign law would "violate some fundamental principle of justice, some prevalent conception of good morals, some deep-rooted tradition of the common weal" (*Loucks v. Standard Oil Co.*, 224 N.Y. 99, 111, 120 N.E. 198 [Cardozo, J.]), the court may refuse to enforce it." (*Cooney v. Osgood Mach., Inc.*, 81 NY2d 66, 78 [1993].) "This public policy exception is reserved "for those foreign laws that are truly obnoxious" (*Cooney*, 81 N.Y.2d at 79, 595 N.Y.S.2d 919, 612 N.E.2d 277; *see Welsbach Elec. Corp.*, 7 N.Y.3d at 629, 825 N.Y.S.2d 692, 859 N.E.2d 498). The party seeking to invoke the exception

bears a "'heavy burden' of proving that application of [the chosen] law would be offensive to a fundamental public policy of this State" (*Welsbach Elec. Corp.*, 7 N.Y.3d at 632, 825 N.Y.S.2d 692, 859 N.E.2d 498; *see Cooney*, 81 N.Y.2d at 80, 595 N.Y.S.2d 919, 612 N.E.2d 277; *Matter of Frankel v. Citicorp Ins. Servs., Inc.*, 80 A.D.3d 280, 286, 913 N.Y.S.2d 254 [2d Dept.2010] )." (*Brown & Brown, Inc. v. Johnson*, 25 NY3d 364, 368–69 [2015].)

Virginia law allows interest rates that would be criminally usurious in New York.[14] Given New York's deeply-rooted public policy against usury (300 years old) the Court holds that the policy against usury is fundamental to New York's "principles of justice" and the application of Virginia law to the instant action would "violate some fundamental principle of justice, some prevalent conception of good morals, some deep-rooted tradition of the common weal". (*Cooney v. Osgood Mach., Inc.*, 81 at 78.)

Multiple court decisions have determined that New York laws against usury constitute fundamental public policy. (*See e.g. Madden v. Midland Funding, LLC*, 237

---

[14] See Virginia Code Ann. § 6.2-308. Entities not permitted to plead usury: "A. No (i) corporation, (ii) partnership that is required to file a certificate pursuant to Chapter 2.1 (§ 50-73.1 et seq.) of Title 50 or was required to file a certificate pursuant to former Chapter 2 (§ 50-44 et seq.) or Chapter 3 (§ 50-74 et seq.) of Title 50 or that is formed under laws other than those of the Commonwealth, (iii) limited liability company, (iv) business trust, or (v) joint venture organized for the purpose of holding, developing, and managing real estate for profit, shall, by way of defense or otherwise, avail itself of any of the provisions of this chapter or any other statutory or case law relating to usury or compounding of interest to avoid or defeat the payment of any interest or any other sum that it has contracted to pay."

10

F. Supp.3d 130, 150 [S.D.N.Y. 2017]: "Further, New York has chosen to make it a felony to charge more than 25% annual interest. N.Y. Penal Law § 190.40. That New York chose to criminalize such conduct is further evidence that its usury prohibition is a fundamental public policy."; *Am. Equities Grp., Inc. v. Ahava Dairy Prod. Corp.*, No. 01 CIV.5207(RWS), 2004 WL 870260, at *8 [S.D.N.Y. Apr. 23, 2004]; *In re McCorhill Pub., Inc.*, 86 BR 783, 793 [Bankr. S.D.N.Y. 1988]: "New York has a strong public policy against interest rates which exceed 25%, which policy must be enforced. *North American Bank, Ltd. v. Schulman*, 123 Misc.2d 516, 474 N.Y.S.2d 383 (1984)"; *Am. Exp. Travel Related Servs. Co. v. Assih*, 26 Misc3d 1016, 1026, [Civ. Ct. 2009]: "The second prong set forth in Restatement (Second) also appears to be applicable in that New York has a strong public policy against interest rates which are excessive and this is a policy the courts must enforce (*North American Bank, Ltd. v. Schulman*, 123 Misc.2d 516, 474 N.Y.S.2d 383 (1984))"; *Guerin v. New York Life Ins. Co.*, 271 AD 110, 116 [1st Dept. 1946]: "Usury is a question of supervening public policy and relates to charges which are in themselves prohibited."; *cf. EMA Fin., LLC v. NFusz, Inc.*, 444 F. Supp3d 530, 542 [S.D.N.Y. 2020].)

Furthermore, when compared to other instances wherein New York appellate courts have determined that a foreign jurisdiction's laws violate New York public policy such that a choice-of-law provision should be void, it is clear that New York's usury statutes satisfy the "'heavy burden' of proving that application of [the chosen]

11

law would be offensive to a fundamental public policy of this State" (*Brown & Brown, Inc. v. Johnson*, 25 NY3d at 368–69.) (See *Brown & Brown, Inc. v. Johnson, supra* the Court of Appeals employed the public policy exception to invalidate a Florida choice-of-law provision on the grounds that Florida's law on covenants not to compete contrasted with New York's laws. ("Considering Florida's nearly-exclusive focus on the employer's interests, prohibition against narrowly construing restrictive covenants, and refusal to consider the harm to the employee—in contrast with New York's requirements that courts strictly construe restrictive covenants and balance the interests of the employer, employee and general public—defendants met their " 'heavy burden' of proving that application of Florida law [to the non-solicitation provision of the parties' agreement] would be offensive to a fundamental public policy of this State" (*Welsbach Elec. Corp.*, 7 N.Y.3d at 632, 825 N.Y.S.2d 692, 859 N.E.2d 498; *see Cooney*, 81 N.Y.2d at 80, 595 N.Y.S.2d 919, 612 N.E.2d 277)." (*Id.* at 370.; see also *Askari v. McDermott, Will & Emery, LLP*, 179 AD3d 127 [2nd Dept. 2019]; *Brooks v. Brooks*, 171 A.D.3d 1462 [4th Dept. 2019].)

Given the Court of Appeals recognition of the historical basis for New York's usury statutes in *Adar Bays, LLC v. GeneSYS ID, Inc., supra,* as well as the harms those statues seek to avoid, the Court must conclude that the application of Virginia's usury laws to the agreement and thus allowing a New York business to charge interest that would be usurious under New York law would be offensive to

the fundamental public policy of this State. Although other states may allow usurious interest rates to be charged, the history of New York usury laws establish that rates of interest that New York deems criminally usurious cannot be charged and doing so violates a fundamental policy of New York State.

Thus, the choice-of-law provision is void, and New York law will apply to the agreement.[15]

### The Loan Agreement is Void and the Complaint Must be Dismissed

It is the burden of the defendants to show that the plaintiff acted with usurious intent. ". . .[W]here a loan agreement usurious on its face, usurious intent will be implied and usury will be found as a matter of law (*see O'Donovan v. Galinski*, 62 A.D.3d at 770, 878 N.Y.S.2d 443; *Fareri v. Rain's Intl.*, 187 A.D.2d 481, 482, 589 N.Y.S.2d 579)." (*Roopchand v. Mohammed*, 154 A.D.3d 986, 988–89 [2nd Dept. 2017].) Here, the agreement had a stated interest rate of 34%, significantly higher than the maximum interest rate allowable in New York. Thus, as the agreement was for a loan less than $2.5 million, the agreement was usurious on its face. Usurious loans are void under New York law. (*See Adar Bays, LLC v. GeneSYS ID, Inc.*, 37 N.Y.3d at 333: "[t]hus, loans proved to violate the criminal usury statute are subject to the same

---

[15] Plaintiff also argues that pursuant to General Obligations Law § 5-1401 the Court is precluded from any choice-of-law analysis. Plaintiff is incorrect. That provision allows parties to agree that the law of New York applies to any contract above $250,000 regardless of whether the agreement has any nexus to New York State. It does not support plaintiff's argument that Virginia law applies.

consequence as any other usurious loans: complete invalidity of the loan instrument.")

Plaintiff requests that the Court, should it determine New York law applies, reform the contract in accordance with an "usury savings clause".[16] However, as the plaintiff charged criminally usurious interest, this relief is not available to it as either an equitable remedy or contractual remedy. (*See Fred Schutzman Co. v. Park Slope Advanced Med., PLLC*, 128 AD3d 1007, 1008 [2nd Dept. 2015]: "Contrary to the plaintiff's further contention, a clause in the subject promissory note purporting to reduce the rate of interest to a non-usurious rate if the rate originally imposed was found to be usurious could not save the note from being usurious (*see Simsbury Fund v. New St. Louis Assoc.*, 204 A.D.2d 182, 611 N.Y.S.2d 557)."; *see also Blue Wolf Cap. Fund II, L.P. v. Am. Stevedoring Inc.*, 105 AD3d 178, 184 [1st Dept. 2013]: "Blue Wolf also asks us to reform the loan transaction instead of voiding it, but an equitable remedy like reformation is unavailable to a party with unclean hands (*see Speranza v. Repro Lab Inc.*, 62 A.D.3d 49, 53-54, 875 N.Y.S.2d 449 [1st Dept. 2009]; *Judge v. Travelers Inc. Co.*, 262 A.D.2d 983, 983-984, 692 N.Y.S.2d 288 [4th Dept. 1999]). Since Blue Wolf charged criminally usurious interest, it is not entitled to equitable relief."; *see also Sweet Baby Lightning Enterprises LLC v. Keystone Cap. Corp.*, No. 21-CV-6528 (RA), 2022 WL 2181450, at *5 (S.D.N.Y. June 15, 2022): "Nor

---

[16] See paragraph 21 of the Agreement.

14

may Plaintiffs seek only the enforcement of the non-usurious portions of the loan contract, because a contract that is deemed void in its entirety cannot be severed to retain only its legal portions. *See Adar Bays*, 179 N.E.3d at 621 (reaffirming that "loans proven to violate the criminal usury statute are subject to the same consequence as any other usurious loans: *complete invalidity* of the loan instrument") (emphasis added). For similar reasons, the loan contract's apparent usury-savings clause, Loan Contract § 14, is ineffective. *See Livewire*, 2020 WL 469312, at *1, *8 n.13 (explaining that a "usury-savings clause in [a] note is ineffective under New York law, [such that] the note is criminally usurious on its face" and collecting New York cases so holding); *see also Carruthers v. Flaum*, 365 F. Supp. 2d 448, 468 (S.D.N.Y. 2005) ("[W]here the main objective of an agreement is illegal—here, providing a loan at an unlawful interest rate—courts will not sever and enforce incidental legal clauses.")

Thus, the Business Loan and Security Agreement dated August 18, 2022 entered into between the plaintiff and the defendants is void. (GOL § 5-511[2]; *Adar Bays, LLC v. GeneSYS ID, Inc, supra; Goldberger v. Magid*, 213 AD3d 452 [1st Dept. 2023].)

Based upon the foregoing, and the papers submitted herein,[17] it is hereby

---

[17] Summons and Complaint with exhibits (NYSCEF Docket #s 1-3); Notice of Motion (NYSCEF Docket # 6); Affirmation in Support with exhibit (NYSCEF Docket # 7-8); Memorandum of Law in

15

ORDERED that the defendants' motion to dismiss the complaint is GRANTED; and it is further

ORDERED that the Business Loan and Security Agreement dated August 18, 2022 entered into between the plaintiff and the defendants is void.

Dated: September 5, 2023

_____
Hon. Daniel J. Doyle
Supreme Court Justice